**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TIMOTHY HENNIGAN, AARON
MCHENRY, and CHRISTOPHER COCKS,
individually and on behalf of themselves
and all others similarly situated,

                 Plaintiffs,
    v.

GENERAL ELECTRIC COMPANY
           Defendants

Case No. 2:09-cv-11912VAR-MJH

(JURY TRIAL DEMANDED)

## THIRD AMENDED CLASS ACTION COMPLAINT

Plaintiffs Timothy Hennigan, Aaron McHenry, and Christopher Cocks, individually on

behalf of themselves and all others similarly situated, bring this Third Amended Complaint

against defendant General Electric Company ("GE") and in support allege as follows:

### NATURE OF THIS ACTION

1.      GE is one of the largest technology, media, and financial services companies in

the world.  Its Industrial Division produces and sells a variety of technological products,

including consumer appliances.

2.      GE participated in the marketing, sale, manufacturing and/or design of microwave

ovens branded with the "General Electric" name.  The microwave ovens contain defects that

make them unreasonably dangerous and unsuitable for their intended use.  GE has known, or

reasonably should have known, that these microwaves were defective, since at least 2002.

3.      On information and belief, Plaintiffs allege that GE has undertaken a deliberate and willful pattern of conduct (including the taking of active measures) aimed at hiding the defects in its microwaves from its consumers, including the Plaintiffs.

**THE PARTIES**

4.      Plaintiff Tim Hennigan is a citizen of the United States of America residing at 330 Winry Drive, Rochester Hills, Michigan 48307.  Mr. Hennigan purchased a GE-branded microwave oven, model number JVM1410WC001, on or about February of 2001.  Mr. Hennigan used his microwave oven as it was intended to be used.  However, on or about June 5, 2008, Mr. Hennigan's microwave oven began operating on its own accord.  Immediately afterwards, the microwave began emitting smoke and sparks.  The control panel on the microwave was inoperable, and could not be used to turn the microwave off.  Mr. Hennigan eventually stopped the smoke and sparks by shutting off power to his kitchen.  As a result, Mr. Hennigan suffered smoke-related damage and he incurred additional replacement costs for his microwave.

5.      Plaintiff Aaron McHenry is a citizen of the United States of America residing at 5213 New Milford, Apartment B, Ravenna, Ohio 44266.  Mr. McHenry acquired a GE-branded microwave oven, model number JES1246BH001, on or about December 2004 as a gift.  Mr. McHenry used his microwave oven as it was intended to be used.  However, on or about February 2006, Mr. McHenry's microwave oven began operating on its own volition.  Mr. McHenry attempted to deactivate his microwave oven via its control panel, but was unsuccessful because after he turned off the power, it would restart again on its own accord.  Mr. McHenry was finally forced to unplug his microwave to stop it from turning on without user direction.  Mr. McHenry purchased a new microwave to replace the defective one.

6.      Plaintiff Christopher Cocks is a citizen of the United States of America residing at

8575 Alta Mesa Road, Oak Hills, California 92344.  Mr. Cocks purchased a GE-branded microwave oven, model number JVM1790WK01, on or about November 2006.  Mr. Cocks used his microwave oven as it was intended to be used.  However, on or about October 7, 2009, Mr. Cock's microwave started operating on its own accord.  Immediately afterwards, the microwave began emitting smoke and was hot to the touch so it could not be turned off manually.  Thus, Mr. Cocks was forced to unplug the microwave to stop it from running.  The microwave is currently inoperable.

7.      Defendant General Electric Company is a New York corporation with its principal place of business at 3135 Easton Turnpike, Fairfield, Connecticut 06828.  At all times relevant hereto, Defendant GE has conducted business in Michigan.

**JURISDICTION AND VENUE**

8.      This Court has original jurisdiction over this civil action under 28 U.S.C. § 1332(d) because this action is a class action filed under Rule 23 of the Federal Rules of Civil Procedure, the amount in controversy exceeds $5,000,000, and there are members of the Class who are citizens of a different state than the Defendants.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this action occurred, or a substantial part of the property that is the subject of this action is situated, in this District.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(c) because GE is a corporation and subject to personal jurisdiction here since they sell, market, and warrant microwave ovens within the District.  Venue is proper in this Division pursuant to Local Rule 83.10.

**CLASS ACTION ALLEGATIONS**

10.     Plaintiffs bring this action on behalf of himself and the members of a class

3

comprising of:

> All persons residing in the United States of America who owned a
> GE-branded microwave oven manufactured since January 2000.
> Excluded from the Class is any entity in which GE has a controlling
> interest or which has a controlling interest in GE or Samsung, and
> GE or Samsung's legal representatives, assigns, and successors.
> Also excluded are the judge assigned to this case and any member
> of the judge's immediate family.

11.    Members of the Class are so numerous that joinder is impracticable.  While the

exact number of Class members is unknown to Plaintiffs, it is believed that the Class is

comprised of millions of members geographically disbursed throughout the United States.  The

Class, however, is readily identifiable from information and records in the possession of GE.

12.    Common questions of law and fact exist as to all members of the Class.  These

questions predominate over questions that may affect only individual Class members because

Defendants have acted on grounds generally applicable to the Class.  Such common legal or

factual questions include:

(a)    Whether GE's microwave ovens are defective;

(b)    Whether GE's microwave ovens are defectively designed and/or
manufactured;

(c)    Whether the microwave oven defects resulted from GE's negligence;

(d)    Whether GE knew or reasonably should have known about the defects
prior to distributing the microwave ovens to Plaintiffs and the Class;

(e)    Whether GE concealed from and/or failed to disclose to Plaintiffs and the
Class the problems with its microwave ovens;

(f)    Whether GE knew or reasonably should have known about the defects
after distributing the microwave ovens to Plaintiffs and the Class;

(g)    Whether GE breached express warranties relating to their microwave
ovens;

(h)     Whether GE breached the implied warranty of merchantability relating to their microwave ovens;

(i)     Whether GE was unjustly enriched by receiving moneys in exchange for microwave ovens that were defective;

(j)     Whether GEshould be ordered to disgorge all or part of the ill-gotten profits it received from the sale of the defective microwave ovens;

(k)     Whether Plaintiffs and the Class are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

(l)     Whether GE should be enjoined from selling and marketing their defective microwave ovens; and

(m)     Whether GE engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing defective microwave ovens.

13.     Plaintiffs' claims are typical of the members of the Class as all members of the Class are similarly affected by GE's actionable conduct.  Plaintiffs and all members of the Class own GE-branded microwave ovens with defects that make the microwave ovens inherently dangerous.  In addition, Defendants' conduct that gave rise to the claims of Plaintiffs and members of the Class (*i.e.* delivering a defective microwave oven, concealing the defect, and breaching warranties respecting the microwave oven) is the same for all members of the Class.

14.     Plaintiffs will fairly and adequately protect the interests of the Class because Plaintiffs have no interests antagonistic to, or in conflict with, the Class that Plaintiffs seeks to represent.  Furthermore, Plaintiffs have retained counsel experienced and competent in the prosecution of complex class action litigation.

15.     Class action treatment is a superior method for the fair and efficient adjudication of this controversy, in that, among other things, such treatment will permit a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense,

or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender.  The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

16.    Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

17.    GE has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## FACTUAL BACKGROUND

18.    The models at issue are branded with the "GE" logo and are sold as GE model microwave ovens.  GE markets these ovens under various names, such as "Spacemaker" or "Over-the-Range" microwave ovens.

19.    Each microwave oven at issue contains a "control panel," which contains a touchpad on the outside surface of the microwave oven.  A consumer uses the control panel to direct the use of the microwave oven, such as cooking temperature and cooking time.

20.    Each microwave oven at issue contains a "cavity magnetron," which is in turn powered by a high voltage transformer.  The cavity magnetron generates the microwaves within the oven, thereby heating the food.

21.    Upon information and belief, each microwave oven at issue contains a "heat sensor" which measures the amount of heat generated within the microwave oven.  Upon information and belief, where a microwave oven generates excessive heat, the heat sensor should

cause the microwave oven to shut down.

22.     The GE-branded microwave ovens contain defects that cause the microwave ovens to begin operation unassisted and may result in smoke or fire.

23.     These dangerous defects are related at least in part to the magnetrons, which Plaintiffs allege are defective.

24.     The defects rendered the microwave ovens unfit for the ordinary purpose for which they are used and caused Plaintiffs and members of the class to suffer damages, including, but not limited to, property damage due to the smoke and/or fire caused by the defective microwave ovens.  The defects were the direct, proximate, and foreseeable cause of damages incurred by Plaintiffs and members of the Class.

25.     As a result of these defects, these microwave ovens pose an unreasonable risk of harm to consumers and their property.

26.     Had the microwave ovens been properly manufactured and/or free from design defects, Plaintiffs and the Class would not have suffered the damages complained of herein.

27.     Defendant GE expressly and impliedly warranted, via user manuals, advertisements, pamphlets, brochures, circulars, samples, and/or models that their microwave ovens are fit for the ordinary purpose in which such goods are used.

28.     GE expressly warranted in its user manuals that it would replace and repair, free of charge, any part of its microwave ovens that failed due to a manufacturing defect within one year from the date of original purchase.  GE further expressly warranted that it would provide, free of charge, a replacement magnetron tube, if the magnetron tube fails because of a manufacturing defect, and that such warranty would extend for the second through the tenth year from the date of original purchase.

29.     However, GE did not repair or replace the defective parts in the microwave ovens owned by Plaintiffs and members of the Class free of charge; or if it did, GE merely replaced the defective part with a substitute that was also defective.

**TOLLING AND ESTOPPEL OF STATUTES OF LIMITATION**

30.     On information and belief, GE was aware, at least as early as 2002, that GE-branded microwave ovens contained defects that caused the microwave ovens to begin operation unassisted and result in smoke or fire.

31.     Although GE was aware of the dangerous defects, it took no steps to warn Plaintiffs or the Class of such defects and the dangers the defects would pose.  Defendants continued to sell the defective microwave ovens to Plaintiffs and the Class.

32.     The defects in the design and/or manufacture of the microwave ovens were not detectible to Plaintiffs and members of the Class until they manifested themselves when the microwave ovens began operation unassisted and resulted in smoke and/or fire.

33.     GE actively concealed the existence of the defects and/or failed to inform members of the Class of the existence of the defects.

34.     On information and belief, GE has undertaken a deliberate and willful pattern of conduct (including the taking of numerous active measures) aimed at hiding the defects in its microwaves from its consumers, including the Plaintiffs.  Among other things, GE has: (a) made false statements to the representatives of the press about incidents of spontaneous microwave fires, (b) made false statements to consumers about incidents of spontaneous microwave fires, (c) deliberately withheld information from the Consumer Product Safety Commission ("CPSC"), (d) violated federal laws requiring the reporting of dangerous defects, (e) caused the CPSC to withhold documents relating to the defects in its microwaves, (f) conspired with the

8

manufacturer of the microwaves to conceal the defects, and (g) withheld and kept secret internal documentation and testing relating to the alleged defects.

35.     Without the benefit of any discovery in this case, Plaintiffs have uncovered a long history of complaints of defects in GE microwave ovens that cause those microwave ovens to catch on fire spontaneously.  Prior to instituting this lawsuit, Plaintiffs' counsel made Freedom of Information Act requests to the Consumer Product Safety Commission ("CPSC").  Plaintiffs' counsel asked for all documentation regarding fires in GE-branded microwaves.  The CPSC produced only thirty pages of documents relating to only two reported incidents.  And in response to Plaintiffs' appeal, the CPSC stated it could not produce other documents (including "test reports and analyses" and comments by GE) because "it would not be fair" to produce such documents "over the firm's [GE's] objections."

36.     Through other means, however, Plaintiffs have obtained numerous other complaints to the CPSC by consumers regarding spontaneous microwave fires.

37.     These incidents date back as far as 1996, when the Consumer Product Safety Commission received a complaint from a consumer in California that her microwave started spontaneously and posed a fire risk.  Another report was made by a consumer from Alabama in 2000.  In 2001, two consumers (one from Connecticut and one from Florida) reported that their microwaves caught fire.  In the Florida fire, the CPSC report concluded that, "Based on information received and the physical evidence available the final determination was that the fire was 'accidental' in nature caused by an undetermined failure in the control panel of the microwave that spread from that point to other combustible materials."  In response to the complaint from Connecticut, a CPSC agent wrote that he had communicated with GE previously about problems with GE microwave magnetrons "failing and arcing," but that GE had assured

him that there were no fires as a result of the failure.  Thus, the agent was accepting GE's
representation that this was a "safe failure."

  38. Soon afterwards, in April of 2002, a GE microwave spontaneously combusted at
1:00 a.m. in a New Jersey home while the family slept.  The owner of the microwave pleaded
with the CPSC to investigate the cause of the fire: "Please help save a life and a home.  How
many fires have been reported to you?  What are you going to do?  Let me know."  In the same
month, another GE microwave control panel caught on fire in an apartment in California when
the microwave was not in use.  The CPSC report stated, "Interviews with neighbors showed
every household had problems with their [GE] microwaves tripping the circuit breakers
overnight, when obviously not in use."  Two months later, a GE microwave in North Carolina
"self-start[ed] while unattended."  The consumer told the CPSC, "This is a dangerous product
that others have experienced similar experiences." [sic]

  39. The CPSC shared all of these complaints with GE.  Then, in December of 2002,
GE issued a service bulletin regarding the magnetrons in eight separate microwave models,
stating that the "Magnetron reliability issue [] does not meet GE's high quality standards."
Among other things, GE informed its service technicians (but not its consumers) that the
magnetrons can cause "Arcing or sparking noise," and "Overheating smell."  The Service
Bulletin directed all technicians responding to consumer complaints to contact the "GE CR
Technical Assistance Group (TAG Team)" if the wave-guide showed "visible signs of arcing or
discoloration."  The Service Bulletin also directed all technicians to repair all identified
microwaves subject to a consumer complaint using a repair kit (which included a replacement
magnetron)—even if there was no discoloration or any sign of arcing.  Despite the determination

that these magnetrons were failing, together with reports of microwave fires, GE did not issue a voluntary recall.

40.    Nor did GE report this defect to the CPSC as it was required to do under Consumer Product Safety Act Section ("CPSA") 15(b).  Section 15(b) required GE to inform the CPSC that its microwaves contained a defect that could create a "substantial product hazard" to consumers.  And GE was required to report these defects because it had information indicating that its microwave ovens creates an unreasonable risk of serious injury or death.  *See* 15 U.S.C. § 2064(b)(3); 16 CFR § 1115.6.  According to the CPSA, even one reported failure could be the basis for a substantial produce hazard determination if an injury is likely or could be dangerous.

41.    As more and more complaints began to come to GE's attention, it continued to violate the dictates of the CPSA.  And it also began to make knowingly false statements to the public about the dangerous defects plaguing its microwave ovens in order to give them false assurances that their microwaves were safe.

42.    According to a CPSC report (provided to GE) a 2004 fire in Florida was caused by a spontaneously combusting GE microwave:  "A built-in microwave was determined to be the cause of a house fire that caused approximately $250,000 to $300,000 in damages to the house and contents of the house.  No one was injured.  The microwave was not 'on' at the time of the fire."  When a reporter contacted GE to ask for comment about the fire, GE declined to be interviewed, but blamed the fire on the consumer: "GE declined to do an interview, saying the fires were the fault of the consumer, not a defect in its microwave."  Shortly afterwards, responding to inquiries about the same Florida fire, GE provided a patently false statement to the press: "The issue raised in the news story—fire starting behind the control panel—has never been found to be a problem in any model of GE microwave."

11

43.     GE made this statement even though a CPSC report (which was provided to GE)
on a spontaneous fire in Boca Raton, Florida in 2001 expressly determined that the cause of the
fire was the microwave control panel: "Based on information received and the physical evidence
available the final determination was that *the fire was* 'accidental' in nature *caused by an*
*undetermined failure in the control panel* of the microwave that spread from that point to other
combustible materials."  GE was also notified by the CPSC of a spontaneous microwave fire in
California in 2002 emanating from the microwave's control panel.  And before GE told the press
that the problem of a fire in the control panel has never been found in a GE microwave, the
CPSC also notified GE of spontaneous fires from control panels in GE microwaves in April of
2003 (in Orange Park, Florida) and January 2004 (in New Jersey).

44.     At approximately the same time, however, another consumer who experienced a
spontaneous microwave fire in a GE microwave was directed by GE to speak to Samsung, which
manufactured the microwaves.  Contrary to GE's claims to the public, the Samsung
representative told the consumer: "He was aware of problems with GE microwave ovens that he
had told me were starting to pop up all over the country and about this age, four to five years.
And that Samsung was concerned about it."

45.     And after GE made this statement to the press, the fires continued.  On August 12,
2004, a GE microwave in Minneapolis turned on and caught on fire "inside the [microwave]
(where the wiring is located).  I had not started the machine."  In August of 2004, an Oregon fire
inspector determined that an "electrical malfunction" caused a fire in an unattended GE
microwave: "A combination microwave oven/range hood ignited while unattended.  The unit
was not in operation at the time. . . The consumer, a 92 year old male with impaired mobility was
in bed at the time of the fire and was treated for smoke inhalation."  A month later, in September

12

of 2004, a spontaneous GE microwave fire in Cambridge, Massachusetts occurred.  The CPSC informed GE: "In the opinion of the local fire investigator, the fire's origin, near the control panel, indicated that it was product-related."  CPSC documents show another fire in December 2004 ("GE SPACEMAKER XL Microwave oven caught fire.  The microwave turned on by itself apparently as no one was in the kitchen or had used the unit!"), January 2005 ("The consumer was sitting at his kitchen table when he heard a popping and crackling noise coming from his microwave.  The unit was not in use.  The consumer discovered a fire in the unit.  The fire was extinguished by the fire department."), and March 2005 (Fire in Laredo Texas originating from control panel while microwave was not in use).  In spite of all of these reports, GE "denied any problems with their microwaves" in a December 2005 story in the Naples Daily News.  That false denial was made in response to inquiries to GE regarding consumers who told the reporter that they were "interested in filing a lawsuit against GE for the company's Spacemaker Microwaves, which they say can randomly catch fire due to a defective membrane in the heating panel.")

46.     Although Plaintiffs have not received CPSC incident reports beyond 2005, other sources have shown continued spontaneous microwave fires throughout the country.  Consumers have reported spontaneous fires in GE microwaves in (among other places): Kentucky (2005), Florida (2006), North Carolina (2006), California (2006), Wisconsin (2006), Washington (2008), West Virginia (2008), Massachusetts (2008), Tennessee (2008), Michigan (2008) and Ohio (2009).[1]

47.     Notwithstanding the nonstop and consistent reports of spontaneous fires in GE microwaves, GE has continued to provide false information to the press.  For instance, when a

---

1 These are in addition to the fires and spontaneous starts experienced by Plaintiffs.  And this is not an exhaustive

news reporter provided GE with a video of McHenry's microwave (which was starting spontaneously) GE falsely assured consumers that there was no risk posed by its microwaves because they have heat sensors that would shut them off before they ever caught on fire: "After looking at the video, GE said, 'there is no risk to the consumer' and 'heat sensors would shut the oven down.'"  GE knows this to be false not only because of the CPSC reports, but also because it has been involved in numerous lawsuits regarding microwaves that spontaneously turned on, caught on fire, and then burned down consumers' homes.

48.     In April of 2009, GE issued a statement to a reporter in Ohio acknowledging that a fire that destroyed an Ohio family's kitchen was caused by a fault in the microwave control panel: "We have investigated Mrs. Mau's claim and have determined that there was a fault in the electrical control panel of the microwave."  But only *two hours later*, GE issued a "revised statement," claiming that its investigation was still ongoing and that GE was "looking at other information recently made available to us."  Plaintiffs allege that there was no such new information, but that GE was lying as part of its nonstop effort to conceal the truth about the dangerous defects in its microwaves.

49.     Plaintiffs allege that GE has conducted internal examinations and investigations into the cause of these fires and that it has exchanged numerous communications with third parties regarding these fires that would show that GE is aware of the risk posed by the defects in its microwaves, but has consciously decided not to disclose that risk to consumers.

50.     For instance, Samsung branded microwaves made for use in recreational vehicles were recalled by the National Travel Safety Board ("NTSB") in 2004 because they contained a defect in the control panel that caused them to turn on spontaneously, which posed a fire risk.

list of spontaneous fires in GE microwaves discovered by Plaintiffs or their counsel.

Plaintiffs allege on information and belief that a significant amount of communication was made between Samsung and GE regarding this defect and whether it implicated any microwaves that Samsung manufactured for GE.  Despite knowledge of a serious defect, GE has hidden this information from the CPSC and has violated its statutory obligations to report its defect to the CPSC.

51.     In addition, Plaintiffs allege on information and belief that GE has prevented the disclosure of information about these defects to the public by objecting to requests made through FOIA to the CPSC.  These objections were not based on good faith efforts to protect trade secrets, but were made with the deliberate intention of hiding the nature of the defects from the public, including the Plaintiffs.

52.     Plaintiffs allege on information and belief that GE also violated federal law by knowingly failing to disclose to the CPSC defective products that create substantial product hazards and pose unreasonable risks of serious injury to consumers.  GE violated these same regulations when it became aware of defects in certain of its microwaves that posed fire risks. Even though it was aware that its microwaves contained a defect that had caused numerous fires, it knowingly and deliberately violated its duty to inform the CPSC of this defect.  In August 2002, GE paid a civil penalty of $1,000,000 to the United States Treasury to settle the CPSC's allegations that GE knowingly failed to report these defects to the CPSC.[2]  In connection with the same defective dishwashers, a New York court found that GE had repeatedly misled New York consumers into believing that they could not repair their defective dishwashers, in order to fraudulently induce them into purchasing new dishwashers from GE.

---

[2] GE entered into a similar settlement with the CPSC in response to CPSC's allegations that GE concealed defects in coffee makers that caused fires.

53.     GE's false statements to the press, its suppression of documents, and its violation of consumer protection laws are all part of a concerted, deliberate arrangement and contrivance aimed at preventing consumers (including Plaintiffs) from learning of the dangerous defects in their microwaves.  GE did this in order to thwart claims against GE (in the form of lawsuits) and to prevent potential consumers from abstaining from purchasing GE products.  In complete bad faith, GE violated the rights of its own consumers and put their health and safety at risk.

54.     As a result of GE's active concealment of the defects and/or failure to inform Plaintiffs and members of the Class of the defects, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.  Furthermore, GE is estopped from relying on any statutes of limitation in light of their active concealment of the defective nature of its microwaves.

## COUNT I
### (Strict Products Liability)

55.     Plaintiff McHenry re-alleges and incorporate each and every allegation set forth above as if fully written herein.

56.     GE marketed, sold, designed and/or manufactured the microwave ovens owned by Plaintiff McHenry and the Class members.

57.     The microwave ovens were defective and/or created an unreasonably dangerous condition.

58.     Plaintiff McHenry and members of the Class suffered damages and injuries due to the defect and/or unreasonably dangerous condition.

59.     The defect and/or unreasonably dangerous condition proximately caused the damages and injuries to Plaintiff McHenry and members of the class.

## COUNT II
## (Express Warranty)

60.     Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

61.     Defendant GE is a "seller" within the meaning of Mich. Stat. § 440.2103(1)(d).

62.     Defendant GE's microwave ovens are "goods" within the meaning of Mich. Stat. § 440.2105(1).

63.     Plaintiffs and the members of the Class are "buyers" within the meaning of Mich. Stat. § 440.2103(1)(a).

64.     Defendant GE expressly warranted via its user manuals, advertisements, pamphlets, brochures, circulars, samples, and models that its microwave ovens are fit for the ordinary purpose in which such goods are used.  GE also expressly warranted in its user manuals that it would replace and repair, free of charge, any part of its microwave ovens that failed due to a defect in materials or workmanship within one year from the date of original purchase and any part of its magnetron tube that fails due to a defect in materials or workmanship within ten years of the date of original purchase.

65.     GE's express warranties were part of the basis of the bargain between GE and Plaintiffs and members of the Class.

66.      GE breached its express warranty in violation of Michigan law and the substantially similar laws of all other states in which Defendants do business because its microwave ovens were not fit for the ordinary purpose in which such goods are used. Specifically, the microwave ovens contained defects that caused them to begin operation unassisted and result in smoke or fire, rendering the microwave ovens unusable for their ordinary

purpose.  GE also breached its express warranty by refusing to repair the microwave ovens and/or replace microwave oven parts damaged by the defects.

67.     Plaintiffs and members of the Class relied upon the representation and/or warranty that they would be supplied a microwave oven free of defects.

68.     Plaintiffs and members of the Class notified GE of the breach.

69.     Plaintiffs and members of the Class sustained injuries and damages as a result of the breach.

## COUNT III
### (Implied Warranty Of Merchantability)

70.     Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

71.     Defendant GE's microwave ovens are "goods" within the meaning of Mich. Stat. § 440.2105(1).

72.     Plaintiffs and the members of the Class are "buyers" within the meaning of Mich. Stat. § 440.2103(1)(a).

73.     A warranty that goods shall be merchantable and fit for the ordinary purposes for which such goods are used is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

74.     GE is a "merchant" within the meaning of Mich. Stat. § 440.2104(1) with respect to microwave ovens.

75.     GE's implied warranty that its microwave ovens were merchantable was part of the basis of the bargain between GE and Plaintiffs and members of the Class.

76.     GE breached the implied warranty of merchantability in violation of Michigan

law and the substantially similar laws of all other states in which Defendants do business

because its microwave ovens were not fit for the ordinary purpose in which such goods are used.

 Specifically, the microwave ovens contained defects that caused them to begin operation

unassisted and result in smoke or fire, rendering the microwave ovens unusable for their ordinary

purpose.

77.     Plaintiffs and members of the Class notified GE of the breach.

78.     Plaintiffs and members of the Class sustained injuries and damages as a result of

the breach.

**COUNT IV**
**(Violation of 15 U.S.C. § 2301 *et seq.*:  The Magnuson-Moss Warranty Act)**

79.     Plaintiffs re-allege and incorporate each and every allegation set forth above as if

fully written herein.

80.     GE's microwave ovens are "consumer products" within the meaning of 15 U.S.C.

§ 2301.

81.     Plaintiffs and members of the Class are "consumers" within the meaning of 15

U.S.C. § 2301.

82.     GE is a "supplier" of the consumer products to consumers and a "warrantor"

within the meaning of 15 U.S.C. § 2301.

83.     GE made written and implied warranties regarding its microwave ovens to

Plaintiffs and members of the class within the meaning of 15 U.S.C. § 2301.

84.     GE violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* by

failing to comply with the written and implied warranties it made to Plaintiffs and members of

the Class.

85.     Plaintiffs and members of the Class sustained injuries and damages as a result of GE's violation of their written and/or implied warranties.

## COUNT V
### (Violation of State Consumer Protection Acts)

86.     Plaintiffs Hennigan and Cocks re-allege and incorporate each and every allegation set forth above as if fully written herein.

87.     GE knew that the GE-branded microwave ovens were defective since at least 2002.

88.     GE concealed and/or failed to inform Plaintiffs Hennigan and Cocks and the Class that the microwave ovens were defective.

89.     Such concealment and/or failure to inform constitutes an unfair, unconscionable, or deceptive act or practice within the meaning of the Michigan Consumer Protection Act, Mich. Stat. § 445.901 *et seq.* and the substantially similar laws of all other states in which Defendants do business.

90.     This unfair, unconscionable, or deceptive act or practice caused damages to Plaintiffs Hennigan and Cocks and the Class.

## COUNT VI
### (Unjust Enrichment)

91.     Plaintiffs Hennigan and Cocks re-allege and incorporate each and every allegation set forth above as if fully written herein.

92.     Plaintiffs and members of the Class conferred a benefit upon GE.  Namely, Plaintiffs and members of the Class paid money to GE for ownership of the GE-branded microwave ovens.

93.     Defendants retained that benefit.

20

94.     Defendants, however, retained that benefit under circumstances that make it inequitable for Defendants to retain it without paying the value thereof.  Specifically, Defendants retained that benefit despite the fact that its microwave ovens were defective.

## REQUESTS FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of himself and all others similarly situated, respectfully request that this Court:

A.      Certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.      Award damages, including compensatory, exemplary, and statutory damages, to Plaintiff and the Class in an amount to be determined at trial;

C.      Grant restitution to Plaintiffs and the Class and require GE to disgorge its ill-gotten gains;

D.      Permanently enjoin GE from engaging in the wrongful and unlawful conduct alleged herein;

E.      Award Plaintiffs and the Class their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

F.      Award Plaintiffs and the Class pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

G.      Award such further relief as the Court deems appropriate.

**PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

_____
E. Powell Miller (P 39487)
THE MILLER LAW FIRM, P.C.
Miller Building
950 West University Drive, Suite 300
Rochester, MI  48307
(248) 841-2200
(248) 652-2852 *facsimile*
epm@millerlawpc.com

Hassan A. Zavareei
TYCKO & ZAVAREEI, LLP
2000 L Street, N.W., Suite 808
Washington, D.C.  20036
(202) 973-0900
(202) 973-0950 *facsimile*
hzavareei@tzlegal.com

*Attorneys for Plaintiffs Timothy Hennigan,*
*Aaron McHenry, and Christopher Cocks*