UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY HENNIGAN, AARON MCHENRY,
and CHRISTOPHER COCKS,
individually and on behalf of themselves
and all others similarly situated,

        Hon. Victoria A. Roberts

    Plaintiffs,

        Case No. 09-11912

v.

GENERAL ELECTRIC COMPANY,

    Defendant.
_____/

## <u>ORDER</u>

## I.    INTRODUCTION

This matter is before the Court on Defendant General Electric Company's

"Motion to Dismiss Plaintiffs' Third Amended Class Action Complaint Pursuant to

Federal Rule of Civil Procedure 12(b)(6)." (Doc. #40).

GE's motion is **GRANTED IN PART AND DENIED IN PART**.

## II.    BACKGROUND AND PROCEDURAL HISTORY

### A.    Timothy Hennigan

Plaintiff Timothy Hennigan is a Michigan resident who purchased a GE

microwave in February 2001.  Hennigan claims that on June 5, 2008, the microwave

began emitting smoke and sparks, and he could not use the control panel to turn it off.

Hennigan eventually stopped the smoke and sparks by shutting off power to his kitchen.

### B.    Aaron McHenry

Plaintiff Aaron McHenry is an Ohio resident who received a GE microwave in December 2004 as a gift.  McHenry claims that in February 2006, the microwave began operating on its own volition, and he had to unplug the microwave to stop it from turning on on its own.

### C.    Christopher Cocks

Christopher Cocks is a California resident who purchased a GE microwave in November 2006.  Cocks claims that on October 7, 2009, his microwave began operating on its own accord, and it could not be turned off manually.  Cocks says he had to unplug the microwave to stop it from turning on on its own.

### D.    Procedural History

On May 19, 2009, Hennigan filed a Complaint against GE and Samsung Electronics America, Inc.  On September 8, 2009, the First Amended Complaint was filed, adding McHenry as a Plaintiff.  On November 9, 2009, Hennigan and McHenry filed a Second Amended Complaint, adding Christopher Cocks as a Plaintiff.

On November 18, 2009, Defendant Samsung Electronics America, Inc. was dismissed by stipulation.

On June 8, 2010, Hennigan, McHenry, and Cocks (collectively "Plaintiffs") filed a Third Amended Class Action Complaint (TAC) against GE on behalf of:

> All persons residing in the United States of America who owned a GE-branded microwave oven manufactured since January 2000.  Excluded from the Class is any entity in which GE has a controlling interest or which has a controlling interest in GE or Samsung, and GE or Samsung's legal representatives, assigns, and successors.  Also excluded are the judge assigned to this case and any member of the judge's immediate family.

Plaintiffs allege GE has known, or reasonably should have known, since 2002, that its microwave ovens are defective and unreasonably dangerous and unsuitable for their intended use.

Plaintiffs' TAC alleges six causes of action: (1) Strict Products Liability (McHenry only); (2) Breach of Express Warranty (all Plaintiffs); (3) Breach of Implied Warranty of Merchantability (all Plaintiffs); (4) violation of The Magnuson-Moss Warranty Act (all Plaintiffs); (5) violation of the State Consumer Protection Acts (Hennigan and Cocks only); and (6) Unjust Enrichment (Hennigan and Cocks only).

## III. STANDARD OF REVIEW

When reviewing a Fed. R. Civ. P. 12(b)(6) motion, the trial court "must construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994) (citing *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976)); *see also Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). Because a Fed. R. Civ. P. 12(b)(6) motion rests upon the pleadings rather than the evidence, "[i]t is not the function of the court [in ruling on such a motion] to weigh evidence or evaluate the credibility of witnesses." *Miller*, 50 F.3d at 377 (citing *Cameron v. Seitz*, 38 F.3d 264, 270 (6th Cir. 1994)). However, while this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). Rather, the complaint must contain either direct or inferential allegations with regard to all the material elements to sustain recovery under some viable legal theory.

*DeLorean*, 991 F.2d at 1240 (citations omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 129 S.Ct.1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

## IV.    APPLICABLE LAW AND ANALYSIS

### A.    Choice-of-Law Determination

The parties agree that the Court applies Michigan law to Hennigan's claims, Ohio law to McHenry's claims, and California law to Cocks' claims.

### B.    McHenry's Strict Products Liability (Count I) (Ohio Law)

McHenry alleges that (1) GE marketed, sold, designed and/or manufactured his microwave; (2) the microwave was defective and/or created an unreasonably dangerous condition; (3) he suffered damages and injures due to the defect and/or unreasonably dangerous condition; and (4) the defect and/or unreasonably dangerous condition proximately caused his damages and injuries.

GE says McHenry's strict products liability claim fails because Ohio law prohibits strict products liability claims for pure economic loss.

> The classification of the type of injury caused by a defective product is integral in determining whether damages are recoverable under strict products liability.  Under strict products liability, damages may be recoverable for personal injury and property damage, but not economic loss.

*Buck v. Sportscoach Div. of Coachman Indus., Inc.*, 1991 WL 108518 at *3 (Ohio App. June 25, 1991) (citing *Chemtrol Adhesives, Inc. v. Am. Mfrs Mut. Ins. Co.*, 42 Ohio St. 3d 40, 45 (1989); *Floor Craft Floor Covering, Inc. v. Parma Cmty. Hosp. Ass'n.*, 54 Ohio

St. 3d 1, 3 (1990)). "[W]here the alleged harm goes beyond the product itself, the application of the [economic loss] doctrine is in error." *High Concrete Tech.*, LLC v. *Korolath of New England, Inc.*, 665 F. Supp. 2d 883 (S.D. Ohio 2009) (citing *Ferro Corp. v. Blaw Knox Food & Chem. Equip. Co.*, 121 Ohio App. 3d 434, 443 (1997) (where alleged harm is not to the "product itself," summary judgment granted on negligence claim on the basis that plaintiff had incurred only economic loss is error)).

McHenry's alleged damage is to the microwave itself. *(See* TAC ¶ 3 ("Mr. McHenry purchased a new microwave to replace the defective one.")). Accordingly, McHenry's strict products liability claim is dismissed.

### B.    Breach of Express Warranty (Count II)

#### 1.    Hennigan (Michigan Law)

Hennigan claims that (1) GE expressly warranted the microwave he purchased; these warranties were part of the bargain; and (3) GE breached these warranties because the microwave he purchased was defective and GE refused to repair or replace the oven parts damaged by the defect. Hennigan claims that GE fraudulently concealed the defects and that the statute of limitations for his claims is tolled.

 Hennigan alleges two express warranties:

(1) "Defendant GE expressly warranted via its user manuals, advertisements, pamphlets, brochures, circulars, samples, and models that its microwave ovens are fit for the ordinary purpose in which such goods are used." (TAC ¶ 64).

(2) "GE also expressly warranted in its user manuals that it would replace and repair, free of charge, any part of its microwave ovens that failed due to a defect in

materials or workmanship within one year from the date of original purchase and any part of its magnetron tube that fails due to a defect in materials or workmanship within ten years of the date of original purchase." (TAC ¶ 64).

In its Motion to Dismiss, GE argues that Hennigan's claims for breach of express warranty should be dismissed because (a) the alleged defect occurred after the express warranty period of one year, (b) the claims are time-barred by the statute of limitations, and (c) the limitations period that time-bars Hennigan's claims is not tolled.

### a. The Express Warranty Period

To maintain an action for breach of express warranty, a plaintiff must allege that the defective product failed during the period of the express warranty. *See In re Onstar Contract Litig.,* 600 F.Supp.2d 861, 879 (dismissing claims of plaintiffs whose express warranties expired prior to the alleged product failure). GE states that "Plaintiffs' breach of express warranty claims fail because their MWOs fulfilled the durational one-year limitations periods of the product Limited Warranties." (Mot. at 17). Hennigan responds that he relies on both the one-year warranty of the entire microwave and the ten-year warranty of the magnetron tube. (Opp'n Br. at 19). Hennigan claims the "dangerous defects [with the microwaves] are related at least in part to the magnetrons, which Plaintiffs allege are defective." (TAC ¶ 23). Defendant responds that Hennigan's "claims purport to go far beyond allegations of faulty magnetrons and seek damages far in excess of repair or replacement of this single component." (Reply Br. at 4). This Court accepts as true Hennigan's allegation that the defects in the microwave are related to the magnetrons.

Hennigan alleges that he purchased his microwave around February of 2001,

and that it began to operate defectively on or about June 5, 2008. Thus, the alleged magnetron defects are within the period of the ten-year warranty. The Court declines to find that Hennigan's breach express warranty claims are outside the express warranty period.

### b. The Statute of Limitations Period

GE argues that even if the alleged defect occurred during the express warranty period, Hennigan's claims are barred by the statute of limitations.

Under Michigan law, "[a]n action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued." M.C.L. § 440.2725(1). "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." M.C.L. § 440.2725(2). However, "[t]his section does not alter the law on tolling of the statute of limitations." M.C.L. § 440.2725(4).

According to GE, Hennigan's cause of action for a breach of warranty claim accrued when the tender of delivery was made. Hennigan alleged that he purchased his microwave on or about February of 2001. (TAC ¶ 4). GE says that "Michigan's four year statute of limitations expired in February 2005, more than four years before Hennigan filed this action." (Mot. at 19).

Hennigan disputes this, and appears to argue that the cause of action accrued when the breach was discovered because the ten-year warranty explicitly extended to

future performance of the microwave. (Opp'n Br. at 20 ("Because the breach of warranty claims are based in part upon an express ten-year . . . warrant[y], GE's statute of limitations arguments are unavailing.")).  Hennigan is correct.

Michigan's UCC provisions say that "a breach of warranty occurs when tender of delivery is made, *except where a warranty explicitly extends to future performance of the goods* and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." M.C.L. § 440.2725(2). "A warranty extends to future performance when the warranty explicitly provides that the goods will be free from defects for a specific period of time." *Synder v. Boston Whaler, Inc.,* 892 F.Supp. 955, 598 (W.D. Mich. 1994) (citing *Executone Business Systems Corp. v. IPC Communications, Inc.,* 442 N.W. 2d 755, 758-60 (Mich. App. Ct. 1989).  However, "[w]ithout a warranty extending to the future performance of the subject goods, a cause of action has been determined to accrue upon tender of delivery." *Rembrandt Construction, Inc. v. Butler Mfg. Co.,* 2006 WL 3375249, at *2 (Mich. App. 2006).

Here, the express warranty extends to the future performance of the microwave. According to the express warranty, the entire microwave was warranted for one year and the magnetron tube was warranted for ten years.  This explicit duration extends to the future performance of the specified microwave parts.  *See Executone Business Systems Corp. v. IPC Communications, Inc.,* 442 N.W. 2d 755, 758-60 (Mich. App. Ct. 1989) ("If a seller expressly warrants a product for a specified number of years, it is clear that, by this action alone, he is explicitly warranting the future performance of the product or goods for that period of time.") (quoting *Standard Alliance Industries, Inc. v.*

8

*Black Clawson Co.*, 587 F.2d 813 (6th Cir. 1978)).

Although GE is correct that the "Michigan Supreme Court has specifically determined that the UCC recognizes no discovery rule," it is of no consequence. (Mot. at 19). Hennigan does not allege that the discovery rule applies.

The Court finds that GE explicitly extended the express warranty to future performance of the goods. Thus, the cause of action accrued when Hennigan knew or had reason to know of the alleged defects with the magnetron tube in his microwave.

Hennigan alleges that he purchased his microwave on or about February of 2001. The ten-year warranty on his magnetron began on the date of purchase. Hennigan alleges that the defects with his microwave began on June of 2008. (TAC ¶ 4). Before the defects manifested in June, Hennigan says he had no reason to know of the defects in his microwave. Therefore, the cause of action accrued in June 2008. Hennigan filed the Complaint on May 19, 2009. The Court declines to find that Hennigan's claim is untimely.

### c. Fraudulent Concealment

Hennigan alleges "that GE has undertaken a deliberate and willful pattern of conduct (including the taking of active measures) aimed at hiding the defects in its microwaves from its consumers, including the Plaintiffs." (TAC ¶ 3). GE claims that Hennigan's allegations fail to meet the specificity required to plead fraud under Fed. R. Civ. Pro. 9(b), and that his allegations are insufficient to support a claim of fraudulent concealment under Michigan law.

Michigan law provides:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations. M.C.L. § 600.5855

This statute tolls the statute of limitations "when a party conceals the fact that the plaintiff has a cause of action." *Romeo Investment Ltd. v. Michigan Consolidated Gas Company,* 2007 WL 1264008 (Mich. App. Ct.) (citing *Sills v. Oakland Gen. Hosp.,* 559 N.W.2d 348, 352 (Mich. App. Ct. 1996)).

In cases which are brought in federal court under diversity jurisdiction, the Federal Rules of Civil Procedure control the procedural aspects of the matter. *See Hanna v. Plumer,* 380 U.S. 460 (1965). "While state law governs the burden of proving fraud at trial in a diversity action in federal court, the procedure for pleading fraud in all diversity suits in federal court is governed by the special pleading requirements of Fed. R. Civ. P. 9(b)." *Minger v. Green,* 239 F.3d 793, 800 (6th Cir. 2001). Rule 9(b) provides:

> "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

The Sixth Circuit has interpreted this to "require that the acts constituting fraudulent concealment of a claim be pled in the complaint." *Evans v. Pearson Enterprises, Inc.,* 434 F.3d 839, 851 (2006); *see also* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1297 (3d ed. 2005) (noting that a "number of courts have held that the language of Rule 9(b) requires a complaint in an action based on fraud or an answer containing a defense or counterclaim based on fraud to

allege all the traditional substantive elements of fraud"). "Three elements must be

pleaded in order to establish fraudulent concealment: (1) wrongful concealment of their

actions by defendants; (2) failure of the plaintiff to discover the operative facts that are

the basis of his cause of action within the limitations period; and (3) plaintiff's due

diligence until discovery of the facts." *Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523

F.2d 389, 394 (1975). The Court finds that Hennigan sufficiently pleads these three

elements.

### (1) Hennigan's Allegations of Wrongful Concealment

To properly toll a statute of limitations under fraudulent concealment, "[t]he

plaintiff must plead in the complaint the acts or misrepresentations that comprised the

fraudulent concealment and must prove that the defendant committed affirmative acts of

misrepresentation that were designed to prevent subsequent discovery." *Phinney v.*

*Perlmutter,* 564 N.W.2d 532, 562-563 (1997). "Mere silence is insufficient." *Sills,* 559

N.W.2d at 352.

Hennigan alleges that GE:

(1)    provided a patently false statement to the press: "The issue raised in the news story – fire starting behind the control panel – has never been found to be a problem in any model of GE microwave."

(2)    falsely denied any problems with its microwaves in response to consumers who told a reporter that they were interested in filing a lawsuit against GE for its Spacemaker microwaves.

(3)    falsely assured consumers that there was no risk posed by its microwaves because they have heat sensors that would shut them off before they ever caught on fire.

(4)    prevented the disclosure of information about the defective microwaves to the public by objecting to requests made through the Freedom of Information Act to the Consumer Product Safety Commission.

(TAC ¶¶ 42, 45, 47, 51).

Defendant says that, if anything, these are allegations that GE concealed the facts underlying the cause of action, not the cause of action. (Reply Br. at 2) (citing *Winterhalter v. Watson Wyatt & Co.,* 87 Fed. Appx. 513, 519-20 (6th Cir. 2004). The Defendant is mistaken. GE's alleged concealment created an inability for Hennigan to discover the cause of action. This is all that is required.

GE also says that Hennigan does not allege the time, place, and content of the alleged misrepresentations as required by the Sixth Circuit. *See U.S. ex rel. Bledsoe v. Comty Health Systems, Inc.,* 501 F.3d 493, 504 (6th Cir. 2007). The Court disagrees. Hennigan alleges multiple false statements, the medium through which those statements were made, and specific dates on which they were made. Hennigan pled sufficient facts to show GE engaged in affirmative conduct that prevented Hennigan from ascertaining the potential existence of a claim, and the statute of limitations is tolled.

### (2) Failure of Hennigan to Discover the Cause of Action

Hennigan alleges that he purchased his microwave on or about February of 2001, and that it first malfunctioned on or about June 5, 2008. "Hennigan did not suspect (and had no reason to suspect) that there was anything wrong with his microwave oven until it malfunctioned." (TAC ¶ 4). These allegations, if true, show that Hennigan failed to discover the operative facts within the four year statute of limitations period, should it have begun to run at the time the microwave was purchased.

### (3) Hennigan Exercised Due Diligence

GE argues that Hennigan did not allege that he acted diligently in attempting to discover the basis for his claims. (Mot. at 15).  Hennigan answers this charge with the following:

> This argument may be the result of an error made by counsel for Plaintiffs. When Plaintiffs [sic] counsel filed its motion for leave to file the TAC, it submitted a copy of the TAC.  That copy contained additional allegations that the Plaintiffs each acted diligently and reasonably but were nonetheless unable to discover the basis for their claims because of the misconduct of GE. TAC, ¶¶ 4-6.  The Court granted Plaintiffs' motion, and Plaintiffs filed the TAC.  As a result of a mistake, however, Plaintiffs filed a version of the TAC that did not include these changes to paragraphs 4-6 of the Second Amended Complaint.  Thus, GE's motion to dismiss appears to have been based upon a version of the TAC that was not originally submitted with the motion for leave to amend.

(Opp'n Br. at 17).

Hennigan alleges that "[p]rior to the time of the fire, Mr. Hennigan acted in a diligent and reasonable manner as an owner of an appliance." (TAC ¶ 4).  GE argues that this allegation is conclusory and is "not entitled to the presumption of truth." (Reply Br. at 1).  However, a reasonable consumer would not, before a malfunction, suspect his microwave is defective. Consumers have "no obligation to scour news reports from other states–or to send FOIA requests to the CPSC—to look for information about their microwave ovens." (Opp'n Br. at 17).  This Court finds Hennigan's arguments persuasive.  Hennigan alleges that he acted with the diligence that a reasonable consumer would demonstrate under the circumstances, and that is all he is required to do.

Therefore, this Court finds that Hennigan sufficiently alleges fraudulent concealment; the Court declines to dismiss Hennigan's claims of breach of express

warranty.

## 2.    McHenry (Ohio Law)

McHenry claims that GE expressly warranted the microwave he purchased and that these warranties were part of the bargain.  McHenry claims that GE breached these warranties because the microwave he purchased was defective and GE refused to repair or replace the microwave oven parts damaged by the defect.

McHenry alleges two express warranties:

(1) "Defendant GE expressly warranted via its user manuals, advertisements, pamphlets, brochures, circulars, samples, and models that its microwave ovens are fit for the ordinary purpose in which such goods are used." (TAC ¶ 64).

(2) "GE also expressly warranted in its user manuals that it would replace and repair, free of charge, any part of its microwave ovens that failed due to a defect in materials or workmanship within one year from the date of original purchase and any part of its magnetron tube that fails due to a defect in materials or workmanship within ten years of the date of original purchase." (TAC ¶ 64).

However, as an Exhibit C of McHenry's opposition brief to GE's motion to dismiss shows, McHenry's express warranty is one year from the date of original purchase.  He has no other express warranties.

GE argues that McHenry's claims for breach of express warranty should be dismissed because (1) the alleged defect occurred after the express warranty period of one year, (2) the claims are time-barred by the limitations period under Ohio law, and (3) the limitations period that time-bars McHenry's claims was not tolled.  McHenry

responds that, because the other Plaintiffs had a five or ten year warranty on their magnetrons, he "is entitled to obtain discovery to establish whether his magnetron warranty was indeed limited to one year, and if so why." (Opp'n Br. at 20). McHenry also says his claims are not time-barred because GE fraudulently concealed the defects in the microwaves, which tolled the statute of limitations.

### (1) McHenry's Express Warranty Period

McHenry says that his "magnetron warranty appears to be limited to one year," although he doesn't concede this. (Opp'n Br. at 10). He would like discovery to determine whether GE "voluntarily extended this warranty." (*Id.* at 10). However, McHenry does not allege any facts to support the contention that GE voluntarily extended his one year express warranty. Instead, McHenry suggests that the fact that the other Plaintiffs had longer express warranties on their magnetrons is supportive of a voluntary extension of McHenry's warranty. McHenry is mistaken.

McHenry also wants discovery to establish "whether GE reduced the warranty to one year because it was aware of the defect" in the magnetrons. (*Id.* at 20). However, he does not establish how this fact might impact his own express warranty. Thus, McHenry's express warranty period is one year.

### (2) The Statute of Limitations Period

GE argues that McHenry's breach of express warranty claims are time barred under Ohio's applicable statute of limitations. Under Ohio law, claims for breach of warranty must be commenced within four years from the date that the cause of action accrues. Ohio Rev. Code § 1302.98(A). "A breach of warranty occurs when tender of

delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered." Ohio. Rev. Code § 1302.98(B).  McHenry received his microwave as a gift on or about December 2004. (TAC ¶ 5).  McHenry claims that his microwave began operating defectively in February of 2006. (TAC ¶ 5**).**  Even if the Court finds that GE's one year warranty explicitly extended to future performance of the microwave, McHenry discovered the defect after the expiration of the express warranty period.  Thus, the Court finds that McHenry's claim for breach of express warranty accrued at the time delivery was tendered. Even if the Court assumes that delivery was tendered when McHenry received his microwave as a gift in December 2004, the four year limitations period expired in December 2008, well before the Complaint was filed.

### (3) Fraudulent Concealment

Although McHenry's claims would be barred by the four year statute of limitations, McHenry claims it was tolled by GE's fraudulent concealment of the cause of action.  GE claims: (1) that McHenry's allegations fail to meet the specificity required to plead fraud under Fed. R. Civ. P. 9(b); and (2) McHenry's allegations are insufficient to support a claim of fraudulent concealment under Ohio law.

"[U]nder certain circumstances Ohio law recognizes that concealment of a cause of action can toll the statute of limitations." *Phelps v. Lengyel,* 237 F. Supp. 2d 829, 836 (N.D. Ohio 2002).  "In order for concealment to toll the statute of limitations, courts have generally held that there must be something of an affirmative character designed to

prevent, and which does prevent, discovery of the cause of action; or some actual artifice to prevent knowledge of the fact; or some affirmative act of concealment or misrepresentation to exclude suspicion and prevent inquiry." *Id.* McHenry alleges the same facts supporting fraudulent concealment as Hennigan. Thus, for the same reasons that Hennigan's allegations are sufficient to meet the pleading standard set forth in Fed. R. Civ. P. 9(b), McHenry's are, as well. This Court declines to dismiss McHenry's claims of breach of express warranty.

### 3. Cocks (California Law)

Defendant does not dispute that Cocks' claim for breach of express warranty is timely.

### C. Breach of Implied Warranty of Merchantability (Count III)

### 1. Hennigan (Michigan Law)

GE claims that Hennigan's breach of implied warranty of merchantability claims are time-barred by the applicable statute of limitations. Under Michigan law, "[a]n action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued." M.C.L. § 440.2725(1). "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." M.C.L. § 440.2725(2). However, "[t]his section does not alter the law on tolling of the statute of limitations." M.C.L. § 440.2725(4).

Hennigan's cause of action for a breach of implied warranty accrued when he purchased his microwave in February of 2001. GE says that "Michigan's four year statute of limitations expired in February 2005, more than four years before Hennigan filed this action." (Mot. at 19). GE is correct. However, this Court finds that Hennigan properly pled fraudulent concealment under M.C.L. § 600.5855. Hennigan's Complaint was filed within the two year period allowed by the statute, and the Court declines to dismiss his claim.

### 2. McHenry (Ohio Law)

GE claims that McHenry's breach of implied warranty of merchantability claims are time-barred by the applicable statute of limitations. Additionally, GE claims that it excluded all implied warranties in a conspicuous manner.

### a. Statute of Limitations

Under Ohio law, claims for breach of warranty must be commenced within four years from the date that the cause of action accrues. Ohio Rev. Code § 1302.98(A). "A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered." Ohio. Rev. Code § 1302.98(B). McHenry received his microwave as a gift on or about December 2004. (TAC ¶ 5). McHenry alleges that his microwave began operating defectively in February of 2006. (TAC ¶ 5). McHenry does not argue that his warranty explicitly extended to future performance; therefore, his claim accrued when delivery was tendered. Even assuming that delivery

was tendered when McHenry received his microwave as a gift in December 2004, the four year limitations period expired in December 2008. McHenry filed suit on May 19, 2009, after the expiration of the limitations period. However, the Court declines to dismiss his breach of implied warranty claims; McHenry pleads facts which, if true, toll the statute of limitations on his breach of implied warranty claims.

**b. Exclusion of Implied Warranty of Merchantability**

"When a seller is a merchant with respect to subject goods, a warranty of merchantability is implied in the sales contract as a matter of law unless it is excluded." *Ohio Savings Bank v. H.L. Vokes Co.,* 560 N.E.2d 1328, 1334 (Ohio Ct. App. 1989). Under Ohio law, "to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous . . . . Language to exclude all implied warranties of fitness is sufficient if it states for example, that 'There are no warranties which extend beyond the description on the face thereof.'" Ohio Rev. Code Ann. § 1302.29(B). Ohio law defines a "conspicuous" provision as "when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals . . . is 'conspicuous.' Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color." Ohio Rev. Code Ann. § 1301.01(J). The determination of whether a provision is conspicuous is a finding for the court. *Id.*

On the front page of the Owner's Manual provided by GE to McHenry, the table of contents lists the warranty on page 35. (Opp'n Br., Ex. C, at 1). On page 35 of the Manual, GE states in large type "GE Microwave Oven One-Year Limited Warranty." (Opp'n Br., Ex. C, at 35). The page continues with smaller type, listing the express

warranty under one delineated section, how to make a warranty claim in another delineated section, and what is not covered by the warranty in another delineated section. At the end of the last section, entitled "What GE Will Not Cover," GE writes in bold type, "Exclusion of implied warranties." Following this GE writes, "Except where prohibited or restricted by law, there are no warranties, whether express, oral, or statutory which extend beyond the description on the face hereof, including specifically the implied warranties of merchantability or fitness for a particular purpose." This statement is not in bold type.

In *Ohio Savings Bank v. H.L. Vokes Co.,* the Ohio Court of Appeals found a disclaimer of implied warranties valid where the words "appeared in contrasting solid capital letters and contained the word 'merchantability' in the disclaiming language." 560 N.E.2d at 1334. Similarly, in *DG Equipment Co., v. Caterpillar, Inc.,* 2008 WL 4758672, at *4 (S.D. Ohio 2008), a disclaimer in all caps and bold type explicitly containing the term "merchantability" was found conspicuous under Ohio law.

In contrast, the Ohio Court of Appeals found a disclaimer inconspicuous where it was on the back page of a sales contract, was "buried in the middle of a full page of small type, in a style identical to the rest of the text," and did not mention "merchantability." *Ressallat v. Burglar & Fire Alarms, Inc.,* 606 N.E.2d 1001, 1007 (Ohio Ct. App. 1992); *see also Insurance Co. of North America v.* Automatic Sprinkler Corp. Of America, 423 N.E.2d 151 (Ohio 1981) (finding disclaimer inconspicuous where it was in an unnumbered paragraph, did not contain the term "merchantability," and had no extraordinary type).

The attempted exclusion of implied warranties by GE is the same type and size

as the surrounding type in that section, with the exception of the heading, which is the same type and size, but bold. While the heading to the disclaimer is in bold type, it is certainly not as large or noticeable as the rest of the headings on the page.  It is not printed in capital letters, is not in larger type than the surrounding text, and is not in a contrasting color. The only factor to consider is whether the bold type of the heading is enough to make it conspicuous as a matter of law.

The Court is not convinced that the provision is "so written that a reasonable person against whom it is to operate ought to have noticed it."  The Court finds this attempted disclaimer is not "conspicuous" under Ohio law.

### 3. Cocks (California Law)

GE claims that Cock's breach of implied warranty of merchantability claims fail because (1) GE excluded all implied warranties in a conspicuous manner; and (2) he does not allege privity with GE.  Cocks responds that GE's reliance on California's Uniform Commercial Code (UCC) is in error.  Cocks argues that California's Song-Beverly Consumer Warranty Act (Beverly-Song Act)  is the correct law to apply.

### a. Exclusion of Implied Warranty of Merchantability

Under the Song-Beverly Consumer Warranty Act, "every sale of consumer goods that are sold in retail in [California] shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable," unless properly disclaimed. Cal. Civ. Code § 1792**.**  "Consumer goods" is defined as "any new product . . . used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables." *Id.* at § 1791(a).  The implied warranty of

merchantability under the Song-Beverly Act requires that consumer goods: "(1) Pass without objection in the trade under the contract description. (2) Are fit for the ordinary purposes for which such goods are used. (3) Are adequately contained, packaged, and labeled. (4) Conform to the promises or affirmation of fact made on the container or label." Cal. Civ. Code § 1791(1)(a).

Although Defendant argues that the UCC applies, the Beverly-Song Act provides: "[W]here the provisions of the Commercial Code conflict with the rights guaranteed to buyers of consumer goods under the provisions of this chapter, the provisions of this chapter shall prevail." Cal. Civ. Code § 1790.3. The meaning of this section is clear, "[t]o 'the extent that the [Song-Beverly] Act gives rights to the buyers of consumer goods, it prevails over conflicting provisions of the Uniform Commercial Code.'" *Mexia v. Rinker Boat Co., Inc.,* 174 Cal. Rptr. 3d 285, 290 (Cal. Ct. App. 2009).

Because a microwave is a consumer good, the Court looks to the Beverly-Song Act to determine whether the implied warranty of merchantability has been disclaimed. According to the Act, "[n]o implied warranty of merchantability . . . shall be waived, except in the case of a sale of consumer goods on an 'as is' or 'with all faults' basis where the provisions of this chapter affecting 'as is' or 'with all faults' sales are strictly complied with." Cal. Civ. Code § 1792.3.  According to § 1792.4 of the Act:

> (a) No sale of goods, governed by the provisions of this chapter, on an "as is" or "with all faults" basis, shall be effective to disclaim the implied warranty of merchantability or, where applicable, the implied warranty of fitness, unless a conspicuous writing is attached to the goods which clearly informs the buyer, prior to the sale, in simple and concise language of each of the following:
>
> (1) The goods are being sold on an "as is" or "with all faults" basis.
>
> (2) The entire risk as to the quality and performance of the goods is with

the buyer.

(3) Should the goods prove defective following their purchase, the buyer and not the manufacturer, distributor, or retailer assumes the entire cost of all necessary servicing or repair

The attempted disclaimer by GE did not satisfy the requirements of disclaimer under the Beverly-Song Act.

Furthermore, the Beverly-Song Act does not allow manufacturers to limit, modify, or disclaim implied warranties where express warranties are given.  Cal. Civ. Code § 1793.  Because GE gave Cocks an express warranty, the Court finds GE's attempted disclaimer of the implied warranty of merchantability, ineffective.

### b. Privity

GE also argues that Cocks' claim must be dismissed because California law requires privity in claims for breach of implied warranties.  "'The general rule is that privity of contract is required in an action for breach of either express or implied warranty and that there is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale.'" *Blanco v. Baxter Health Corp.,* 70 Cal. Rptr. 3d 566, 528 (Cal. App. 4 Dist. 2008) (citing *All West Electronics, Inc. v. M-B-W, Inc.,* 64 Cal. Rptr. 2d 509 (Cal. App. 5 Dist. 1998)). However, there is a split of authority under California law as to whether the general requirement of vertical privity for breach of warranty is required for claims brought under the Song-Beverly Act. *See Bruce v. Harley-Davidson, Inc.,* 2010 WL 3521775, at *9 (C.D. Cal. 2010) (acknowledging the split in case law, but finding "the better reasoned case law does not require[ ] plaintiffs to be in vertical privity with defendants under the Song-Beverly Act"); *Nvidia GPU Litigation,* 2009 WL 4020104, at *4 (N.D. Cal. 2009) (discussing the split in

case law).

The Song-Beverly Act provides, "every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792.1. The language of the Act does not require privity and appears to contemplate that consumers will be able to enforce warranties against manufacturers. *See Gusse v. Damon Corp.,* 470 F.Supp.2d 1110, 1116 n. 9 (C.D. Cal. 2007) ("Although Damon also argues that the implied warranty claims should be dismissed because there is no vertical privity between Gusse and the manufacturer, this argument ignores the plain language of the Song-Beverly Act."); *Nvidia GPU Litigation,* 2009 WL 4020104, at *4 (noting that "the plain language of the Song-Beverly Act does not require vertical contractual privity between a manufacturer and consumer"). According to California courts, the Song-Beverly Act "'is strongly pro-consumer' and 'makes clear its pro-consumer remedies are in addition to those available to a consumer pursuant to the [Uniform] Commercial Code. . . .'" *Morgan v. Harmonix Music Systems, Inc.,* 2009 WL 2031765, at *1 (N.D. Cal. 2009) (citing *Murillo v. Fleetwood Enterprises, Inc.,* 17 Cal. 4th 985, 990 (1998).

Based on the language of the statute and the pro-consumer nature of the Song-Beverly Act, the Court declines to dismiss Cocks' claim for breach of implied warranty.

## D.    Violation of The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* (Count IV)

The Magnuson-Moss Warranty Act provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract,

may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). It permits "consumers to enforce written and implied warranties in federal court, borrowing state law causes of action." *Pearson & Son Excavating Co., Inc. v. Western Recreational Vehicles, Inc.,* 2007 WL 836603, at *1-2 (E.D. Mich. 2007). GE claims the because the Plaintiffs' state law breach of warranty claims fail, their Magnuson-Moss Warranty claims fail, as well.

Because the Court declines to dismiss Hennigan's, McHenry's, and Cock's state law breach of warranty claims, the Court declines to dismiss their Magnuson-Moss Warranty Act claims.

**E.    Hennigan and Cocks' Claims for Violation of the State Consumer Protection Acts (Count V)**

Hennigan and Cocks allege that: (1) GE concealed and/or failed to inform them that their microwaves were defective; and (2) such concealment and/or failure to inform violates the Michigan Consumer Protection Act, MCLA §445.901 *et seq*, and the laws of California.

GE says Hennigan's claim is barred by the statute of limitations, and Cocks does not satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b).

**1.    Hennigan (Michigan Law)**

MCLA §445.911(7) says: "An action under this section shall not be brought more than 6 years after the occurrence of the method, act, or practice which is the subject of the action[.]"

The parties do not dispute that the statute of limitations began to run when Hennigan purchased his microwave in February 2001. Accordingly, the statute of limitations expired in February of 2007.

However, Hennigan argues that the statute of limitations is tolled because GE concealed the fact that he had a cause of action. *See* M.C.L. §600.5855.

The Court finds Hennigan pled sufficient facts to show GE engaged in affirmative conduct that prevented Hennigan from ascertaining the potential existence of a claim under the Michigan Consumer Protection Act, and the statute of limitations is tolled.

Hennigan alleges that he discovered the microwave was defective on June 5, 2008. Accordingly, he had until June 5, 2010 to file a Complaint. Hennigan's Complaint was timely filed on May 19, 2009.

The Court declines to dismiss Hennigan's Michigan Consumer Protection Act claim.

### 2.    Cocks (California Law)

California's Consumer Legal Remedies Act (CLRA) prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in any transaction intended to result or which results in the sale . . . of goods or services to any consumer." Cal. Civ. Code §1770. Under the Unfair Competition Law (UCL), unfair competition is "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. GE contends that Cocks failed to state a claim under these statutes because he did not allege his claims with the particularity required by Fed. R. Civ. P. 9(b). Cocks responds

that Rule 9(b) doesn't apply to these claim because fraud is not an essential element under either.

Under Rule 9(b), all averments of fraud must be stated with particularity. The Sixth Circuit has recognized that the particularity requirement of Rule 9(b) applies to cases in federal court even where state law supplies the cause of action. *See Minger v. Green*, 239 F.3d 793, 800 (6th Cir. 2001). Fraud is not an essential element of a case under the UCL or CLRA. *Vess v. Ciba-Geiby Corp. U.S.A.,* 317 F.3d 1097, 1107 (9th Cir. 2003). "In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct. In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess,* 317 F.3d at 1103-04; *see also Indiana State Dist. Council of Laborers v. Omnicare, Inc.* 583 F.3d 935, 942 (6th Cir. 2009) (noting that claims which sound in fraud must comply with Rule 9(b)). Thus, where a claim alleges that the defendant engaged in "fraudulent conduct" under the CLRA and UCL, the claims sound in fraud and must be pleaded with particularity. *See Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir. 2009).


"Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)." *Vess,* 317 F.3d at 1105. Under California law, the elements of fraud are "(a) misrepresentation (false

representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damages." *Engalla v. Permanente Medical Group, Inc.,* 15 Cal. 4th 951, 974 (Cal. 1997) (internal quotes omitted). Thus, misrepresentation, concealment, and nondisclosure are all fraud claims which must be pleaded with particularity pursuant to Rule 9(b). *See Kearns,* 567 F.3d at 1127.

Cocks says his UCL and CLRA claims are not premised on fraud, and that to the extent he alleges any fraud, it is in relation to the statute of limitations issue. However, California law recognizes that misrepresentation, concealment, and nondisclosure are all types of fraud. Thus, Cocks alleged fraud as the basis of his claims under the CLRA and UCL and must comply with Rule 9(b) to sufficiently state a claim.

Cocks alleges that GE was aware of dangerous defects in its microwaves, yet actively tried to conceal these defects by making false statements to the press and to consumers. Cocks alleges GE withheld information from the Consumer Product Safety Commission and violated federal laws by not reporting the known defects. Cocks alleges multiple false statements, the medium through which those statements were made, and specific dates on which they were made. For the same reasons that Plaintiffs adequately plead fraudulent concealment, the Court finds that Cocks adequately pleads fraud to support his claims under the UCL and CLRA.

**F.      Hennigan and Cocks' Claim for Unjust Enrichment (Count VI)**

**1.      Hennigan (Michigan Law)**

"The elements of a claim for unjust enrichment are: (1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Barber v. SMH (US), Inc.*, 202 Mich. App. 366, 375 (1993) (citing *Dumas v. Auto Club Ins. Ass'n*, 437 Mich. 521, 546 (1991)).

In light of the fact that the published Michigan cases do not require a direct benefit to GE from Hennigan, the Court is not persuaded by GE's reliance on an unpublished case to support its position that Hennigan's claim fails because he must show GE received a "direct payment or . . . benefit." *See* M.C.R. 7.215(C)(1) ("An unpublished opinion is not precedentially binding under the rule of stare decisis").

In addition, under Fed. R. Civ. P. 8(e)(2), a party may plead a contract claim and an alternative claim for unjust enrichment. *See Truck Country of Iowa, Inc. v. R&J Truck Sales, LLC*, 2008 WL 2026141 at *9 (E.D. Mich. May 9, 2008) (citation omitted).

The Court declines to dismiss Hennigan's unjust enrichment claim.

### 2. Cocks (California Law)

To state a claim for unjust enrichment under California law, a plaintiff must allege (1) defendant's receipt of a benefit and (2) that the benefit was unjustly retained at the plaintiff's expense. *Peterson v. Cellco P'ship.,* 164 Cal. App. 4th 1583, 1593 (Ca. Ct. App. 2008).

GE claims that Cocks must allege mistake, fraud, coercion or request as the basis for his unjust enrichment claim. (Mot. at 45). However, the case GE relies on does not stand for this proposition. California law does not require fraud or wrongdoing. *See Frank v. Tavares,* 142 Cal. App. 2d 683, 688 (Cal. Ct. App. 1956). California

requires that a plaintiff allege that the defendant's retention of the benefit is unjust, and Cocks does so. (*See* TAC ¶ 94).

In addition, under Fed. R. Civ. P. 8(e)(2), a party may plead a contract claim and an alternative claim for unjust enrichment. *See Truck Country of Iowa, Inc. v. R&J Truck Sales, LLC*, 2008 WL 2026141 at *9 (E.D. Mich. May 9, 2008) (citation omitted).

The Court declines to dismiss Cocks' unjust enrichment claim.

## V.    CONCLUSION

GE's motion is **GRANTED IN PART AND DENIED IN PART**.

The Court **DISMISSES** McHenry's strict products liability claim (Count I).

The following claims will proceed to trial:

(1)    Hennigan's, McHenry's, and Cocks' breach of express warranty claims (Count II);

(2)    Hennigan's, McHenry's, and Cocks' breach of implied warranty of merchantability claims (Count III);

(3)    Hennigan's, McHenry's, and Cocks' claims for violations of the Magnuson-Moss Warranty Act (Count IV);

(4)    Hennigan's and Cocks' claims for violations of state consumer protection laws (Count V);

(5)    Hennigan's and Cocks' unjust enrichment claims (Count VI).

**IT IS ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  September 29, 2010

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 29, 2010.

s/Linda Vertriest
Deputy Clerk