## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TIMOTHY HENNIGAN, AARON
McHENRY, and CHRISTOPHER COCKS,
individually and on behalf of themselves
and all others similarly situated,

Plaintiffs,

v.

GENERAL ELECTRIC COMPANY,

Defendant.

Case. No. 2:09-CV-11912VAR-MJH

Hon. Victoria A. Roberts

Magistrate Judge Michael J. Hluchaniuk

---

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DFENDANT GENERAL ELECTRIC COMPANY'S MOTION TO STRIKE PLAINTIFFS' THIRD AMENDED INITIAL EXPERT DISCLOSURE AND PRECLUDE TESTIMONY OF PLAINTIFFS' NEW EXPERT ABRAHAM J. WYNER

Plaintiffs Timothy Hennigan, Aaron McHenry, and Christopher Cocks

("Plaintiffs") respectfully submit this Response In Opposition to Defendant General

Electric Company's ("GE") Motion to Strike Plaintiffs' Third Amended Initial Expert

Disclosure And Preclude Testimony of Plaintiffs' New Expert Abraham J. Wyner, Ph.D.

i

# TABLE OF CONTENTS

CONTROLLING OR MOST APPROPRIATE AUTHORITIES AND INDEX OF AUTHORITIES..................................................................................................iii

COUNTER-STATEMENT OF ISSUES PRESENTED.................................................v

INDEX OF EXHIBITS.............................................................................................vii

INTRODUCTION......................................................................................................1

ARGUMENT..............................................................................................................2

    I.     THE PROCEDURAL HISTORY OF THIS CASE DEMONSTRATES PLAINTIFFS' JUSTIFICATION FOR DESIGNATING A REBUTTAL EXPERT...............................................2

          A.    Plaintiffs Have Not Previously Designated A Statistical Expert....2

          B.    GE Has Made Repeated Misrepresentations Regarding The Role Of Its Expert Dr. Marais Which Necessitate Plaintiffs' Request To Designate Rebuttal Expert Dr. Wyner........................................4

          C.    Dr. Marais' Report Makes False Assertions Which, Left Unrebutted, Would Severely Prejudice Plaintiffs ..........................6

          D.    The Parties' Communications Subsequent To Dr. Marais' Deposition Further Establish The Need For A Rebuttal Expert.....8

    II.    THE COURT SHOULD NOT STRIKE PLAINTIFFS' REBUTTAL EXPERT WITNESS ..................................................................................10

          A.    Rule 26(a)(2)(D)(ii) Should Be Applied To This Case.................11

               1.    Where A Scheduling Order Is Silent On Rebuttal Experts, Rule 26(a)(2)(D)(ii) Should Be Applied.............................11

               2.    Dr. Wyner Is A Proper Rebuttal Expert Within Rule 26(a)(2)(D)(ii)'s Parameters ....................................................

          B.    Dr. Wyner's Rebuttal Is Substantially Justified And Harmless.....14

1.      Plaintiffs' Disclosure Of Dr. Wyner Is Substantially
        Justified ................................................................................ 17

2.      Plaintiffs' Disclosure Of Dr. Wyner Is Harmless ............. 18

CONCLUSION ................................................................................................ 21

# CONTROLLING OR MOST APPROPRIATE AUTHORITIES AND INDEX OF AUTHORITIES

## Statutes

Fed. R. Civ. P. 16........................................................................................10

*Fed. R. Civ. P. 26........................................................................................ *passim*

Fed. R. Civ. P. 37........................................................................................11

## Cases

*Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306 (M.D.N.C. 2002) .........................13

*Allen v. Dairy Farmers of Am., Inc.*, 5:09-CV-230, 2013 WL 211303
(D. Vt. Jan. 18, 2013)...............................................................................12

*\*Bowman v. Colomer*, CIV.A. 09-1083, 2011 WL 3812583
(W.D. Pa. Aug. 29, 2011) ..................................................................16, 19, 20

*\*Buhr Bros., Inc. v. Michaelis*, 2013 WL 1501571
(D.S.D. Apr. 11, 2013) .......................................................................16, 19, 20

*Eckelkamp v. Beste*, 315 F.3d 863 (8th Cir. 2002) ...................................13

*Fuqua v. United States*, 5:09-CV- 212, 2011 WL 4742658
(W.D. Ky. Oct. 7, 2011)...............................................................................17

*\*Haymer v. Countrywide Bank, FSB*, 10 C 5910, 2013 WL 5162286
(N.D. Ill. Sept. 13, 2013)................................................................... *passim*

*In re Air Crash Disaster*, 86 F.3d 498 (6th Cir. 1996) ...........................14

*\*Koloda v. Gen. Motors Parts Div., Gen. Motors Corp.*, 716 F.2d 373
(6th Cir. 1983)...............................................................................20

*Madison Capital Co., LLC v. S & S Salvage, LLC*, 4:08-CV-00134-JHM, 2011
WL 195639 (W.D. Ky. Jan. 19, 2011)...................................................15

*Masler v. Marshall Fields*, CIV. 06-4917PAMJSM, 2007 WL 6815352
(D. Minn. Dec. 21, 2007) ........................................................................13

*\*Powell v. Tosh*, 276 F.R.D. 553 (W.D. Ky. 2011)..........................................17, 19

*Rojek v. Catholic Charities of Jackson, Inc.*, No. 08-14492, 2010 WL 2232240
(E.D. Mich. May 27, 2010) ...............................................................12, 13

*SG Indus., Inc. v. RSM McGladrey, Inc.,* No. 10-CV-11119, 2011 WL 6090247
(E.D. Mich. Dec. 7, 2011).......................................................................18

*Shaw v. Am. Honda Motor Co., Inc.*, CIV.A. 10-38, 2010 WL 4687836
(E.D. La. Nov. 10, 2010).........................................................................13

*Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955
(2d Cir. 1997) ........................................................................................16

*\*Srock v. United States*, 04-CV-72788-DT, 2006 WL 1795095
(E.D. Mich. June 28, 2006) ...............................................................12, 13

*Syringe Dev. Partners L.L.C. v. New Med. Tech., Inc.*, IP98-1726CMS, 2001
WL 403232 (S.D. Ind. Feb. 9, 2001) .......................................................12

*United States v. Cerna*, CR 08-0730 WHA, 2010 WL 2347406
(N.D. Cal. June 8, 2010) .........................................................................14

*Vaughn v. HomeGoods, Inc.*, 07-CV-15085, 2008 WL 4239505
(E.D. Mich. Sept. 11, 2008) ....................................................................18

*Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985
(10th Cir. 1999) .....................................................................................15

## **COUNTER-STATEMENT OF ISSUES PRESENTED**

1.      The Court's Scheduling Orders are silent on whether to allow rebuttal experts.
Relevant cases have held that when a scheduling order is silent, the court has the
discretion to apply Federal Rule of Civil Procedure 26(a)(2)(D)(ii) to allow for them.
Does the Court have the discretion to grant leave for Plaintiffs' rebuttal witness
Abraham J. Wyner, Ph.D. to rebut the opinions of GE's Expert M. Laurentius Marais?

      **Plaintiffs' Answer: Yes**

2.      Dr. Marais' opinions regarding the relevancy of statistics to the case are
inaccurate and misleading. Because GE has not been transparent regarding its
intended use of Dr. Marais, Plaintiffs did not have a previous opportunity to rebut Dr.
Marais' opinions.  Federal Rule of Civil Procedure 37(c)(1) allows for late disclosure
of a rebuttal expert if it is substantially justified <u>or</u> harmless.  Should the Court allow
Plaintiffs' disclosure of Dr. Wyner to rebut the opinions of Dr. Marais because it is
substantially justified?

      **Plaintiffs' Answer: Yes**

3.      Plaintiffs have requested leave to disclose Dr. Wyner as soon as the need
became apparent, have already served his expert report and submitted their class
certification motion on schedule, and have stipulated to extend GE's response

deadlines accordingly in this case which has been ongoing for many years.  Federal Rule of Civil Procedure 37(c)(1) allows for late disclosure of a rebuttal expert if it is substantially justified <u>or</u> harmless.  Should the Court allow Plaintiffs' disclosure of Dr. Wyner to rebut the opinions of Dr. Marais because it is harmless?

**Plaintiffs' Answer: Yes**

## INDEX OF EXHIBITS

EXHIBIT 1: Declaration of Thomas Frazee

EXHIBIT 2: Declaration of Hassan A. Zavareei in Support of Plaintiffs' Opposition to Defendant General Electric Company's Motion to Strike Plaintiffs' Third Amended Initial Expert Disclosure and Preclude Testimony of Plaintiffs' New Expert Abraham J. Wyner

EXHIBIT 3: Expert Report of Abraham J. Wyner, PH.D. **[FILED UNDER SEAL]**

EXHIBIT 4: Declaration of Lorenzo B. Cellini in Support of Plaintiffs' Opposition to Defendant General Electric Company's Motion to Strike Plaintiffs' Third Amended Initial Expert Disclosure and Preclude Testimony of Plaintiffs' New Expert Abraham J. Wyner

EXHIBIT 5: Declaration of Anna C. Haac in Support of Plaintiffs' Opposition to Defendant General Electric Company's Motion to Strike Plaintiffs' Third Amended Initial Expert Disclosure and Preclude Testimony of Plaintiffs' New Expert Abraham J. Wyner

EXHIBIT 6: Declaration of Andrew J. Silver in Support of Plaintiffs' Opposition to Defendant General Electric Company's Motion to Strike Plaintiffs' Third Amended Initial Expert Disclosure and Preclude Testimony of Plaintiffs' New Expert Abraham J. Wyner

EXHIBIT 7: Email Exchange between Hassan A. Zavareei and Jodi Munn Schebel, dated January 17, 2013 – January 21, 2013

EXHIBIT 8: Excerpts from the Deposition Testimony of Dr. M. Laurentius Marais, Taken on Dec. 18, 2013 **[FILED UNDER SEAL]**

## INTRODUCTION

GE seeks to strike Plaintiffs' rebuttal expert witness Abraham J. Wyner, Ph.D. Due to GE's lack of transparency regarding its intended use of M. Laurentius Marais, Ph.D. as an expert, Plaintiffs are now technically outside of the timeframe in which they may designate a rebuttal expert.  However, contrary to GE's assertions, it is well within the Court's discretion to allow Dr. Wyner's rebuttal testimony.  Plaintiffs have not previously designated a statistical expert, and Dr. Wyner's report is limited to rebutting Dr. Marais' deceptive opinions. Dr. Wyner's rebuttal is substantially justified due to GE's misrepresentations regarding Dr. Marais.  It is also harmless, as its late disclosure was not in bad faith and will not prejudice GE or cause undue delay.  While GE's motion bemoans that Plaintiffs' disclosure of Dr. Wyner could be prejudicial if it delayed class certification, Plaintiffs Motion for Class Certification was filed in accordance with the scheduling order.  Dkt. 157.  Indeed, Plaintiffs agreed to *GE's request* to vacate GE's response deadline to allow the Court time to decide these motions and provide GE time depose Dr. Wyner without any time pressure. Dkt. 156 ¶ 5.

Plaintiffs acted in good faith, were reasonably justified in their delay, and GE will not be prejudiced by allowing Plaintiffs to rebut GE's statistics expert.  Plaintiffs tried repeatedly to meet and confer on this issue with GE, but it became clear during those discussions that GE's only real objection to the designation of Dr. Wyner is that it would be bad for GE's case.  In other words, GE seeks to exclude Dr. Wyner so it they can maintain their unfair advantage of having an unrebutted expert in a field that has no bearing on this case.  And the only way the Plaintiffs can overcome this unfair advantage is to provide the testimony of another statistician to explain why Dr. Wyner's testimony is misleading and irrelevant.

1

Plaintiffs respectfully ask the Court to forgive their failure to meet the deadlines of Rule 26(a)(2)(D)(ii) so that this case can be decided on an even playing ground—not based on an unfair advantage GE would have if its misleading statistics opinions are unchallenged.

## ARGUMENT

## I.   THE PROCEDURAL HISTORY OF THIS CASE DEMONSTRATES PLAINTIFFS' JUSTIFICATION FOR DESIGNATING A REBUTTAL EXPERT

### A.   Plaintiffs Have Not Previously Designated A Statistical Expert

Throughout its argument in support of striking Plaintiffs' statistical rebuttal expert, GE repeatedly makes the false claim that Plaintiffs should have anticipated Dr. Marais' testimony because Plaintiffs previously designated and withdrew a statistical expert, Dr. James Woods. Dkt. 154, at 14, 17, 18, 21, 26, 33, 35.  Plaintiffs initially disclosed experts on September 28, 2012, which included the disclosure of Plaintiffs' damages expert, Mr. Thomas Frazee, stating that Frazee would offer testimony on "[d]amages suffered," "[m]ethods for computation of damages," and "[c]omputation of damages suffered by Plaintiffs and the proposed class and/or subclasses."  Dkt. 154-4 at 4-5.  Along with Frazee, Plaintiffs listed Chris Johnson and James Woods, Mr. Frazee's colleagues at UHY Advisors who he suggested should be included based on the possibility that they might assist him in certain areas of his work.  *See* Frazee Declaration, Ex. 1, ¶ 3.  Dr. Woods and Mr. Johnson were not meant to be, nor did they ever serve as, independent experts and were only meant to assist Mr. Frazee in the preparation of his damages report.  It was never contemplated that they would provide any expert opinions unrelated to Mr. Frazee's

damages analysis, and they did not perform any substantive work during the engagement.  *Id.* ¶ 3-5; *see also* Zavareei Declaration, Ex. 2, ¶ 3-4.

In June 2013, Mr. Frazee left UHY Advisors and formed Frazee Valuation & Forensic Consulting, where he continued work on his expert report in this case, which was submitted August 2, 2013.  However, because Dr. Woods and Mr. Johnson remained at UHY Advisors, they were no longer a part of Frazee's team, and he had no further contact with them pertaining to his report.  Ex. 1, ¶ 6; Ex. 2, ¶ 5. As a result of Frazee's change in employment, Plaintiffs made a "a ministerial change to the identification of certain of Plaintiffs' designated expert(s)," Dkt. 154-3 at 17, withdrawing Dr. Woods and Mr. Johnson in the June 27, 2013 Stipulated Order Regarding Substitution of Experts and Certain Scheduling Order Deadlines. *Id.* ¶ 3. GE was well aware of Plaintiffs' reason for removing these experts, as it was communicated to them via a June 20, 2013 email regarding the June 27, 2013 Stipulated Order. Plaintiffs' attorney wrote: "Since our damages expert, Thomas Frazee, left his former firm, we will also be making it clear that one of the support personnel identified in our disclosures is not working with him on the report." Dkt. 154-8 at 2; Ex. 2 ¶ 6.  Yet throughout its brief, GE claims—without any basis in fact—that "Plaintiffs initially disclosed an expert purportedly qualified to offer opinions regarding 'statistical analysis,' but chose not to use him." Dkt. 154 at 26.

Nor did Plaintiffs ever represent or indicate that Dr. Woods (who has a Ph.D. in finance, not statistics) would be providing statistical opinions.  GE appears to have arrived at this incorrect conclusion based on an unverified, unauthenticated copy of Woods' CV from the Internet. Dkt. 154-5 at 2-5.  This Court should not consider this

3

CV, as it is not properly in evidence.  However, Plaintiffs note that even if it did, it would be hard-pressed to find evidence of Woods' alleged statistical expertise, as it contains only two short bullet points regarding any statistical experience.  *Id.* at 3. Dr. Woods is not trained as a statistician, nor does he purport to be one, and Plaintiffs have never made claims otherwise.  Plaintiffs have never met or communicated with Dr. Woods and never intended to use him as an independent expert on any topic, much less on statistics. Ex. 2 ¶ 3.  GE's characterizations are *post hac* speculations counter to the designation.  Notably, GE does not claim that it reviewed this CV prior to designating Dr. Marais as a statistical expert or that they ever believed Dr. Woods was going to provide statistical opinions.

### B. GE Has Made Repeated Misrepresentations Regarding The Role Of Its Expert Dr. Marais Which Necessitate Plaintiffs' Request To Designate Rebuttal Expert Dr. Wyner

GE initially disclosed Dr. Marais as an expert on November 2, 2012, Dkt. 152-2 at 5, stating that Dr. Marais would offer testimony on "Plaintiff's alleged damages and class certification."  Although GE's disclosure also stated that Dr. Marais could offer "statistical analysis," because Plaintiffs did not have a statistical expert, and there was no indication that a statistical report would be relevant in any other way, Plaintiffs reasonably believed that any such analysis would be related to Dr. Marais' opinions on damages.  At no point before Dr. Marais' report was served did GE indicate otherwise.  Indeed, Plaintiffs' research revealed Dr. Marais as the expert who provided damages opinions in a similar case in the Northern District of Ohio about defective washing machines.  *See In Re Whirlpool Corp. Frontloading Washer*

*Products Liability Litigation,* No. I:08-WP-65000 (N.D. Oh. 2013).  Plaintiffs had no reason to suspect that Dr. Marais would play a different role here.

The parties were in communication regarding amending their expert disclosures, and both parties permitted the other to do so.  Dkt. 154 at 15.  In order for Plaintiffs' damages expert to prepare his report, Mr. Frazee required certain discovery from GE which GE could not provide within the timeframe of the scheduling order then in effect.  *See* Dkt. 147 at 1.  As a result, GE agreed to grant Plaintiffs an extended deadline for filing Mr. Frazee's report, *Id.* ¶ 4(a), and Plaintiffs agreed to grant GE an extended deadline for taking Mr. Frazee's deposition, *Id.* at  ¶ 4(b), and for submitting Dr. Marais' report, *Id.* at  ¶ 4(c), which Plaintiffs' reasonably understood would be a rebuttal to Mr. Frazee's damages opinions.  Plaintiffs and GE thus filed a joint Stipulated Order Regarding Substitution Of Experts And Certain Scheduling Order Deadlines on June 27, 2013.  Dkt. 147.  Plaintiffs would not have granted an extension for GE to file Dr. Marais' report had they not been led to believe that Dr. Marais would serve as a rebuttal expert to Frazee.

In addition, GE's counsel informed Plaintiffs' counsel in a meet and confer via telephone that GE had originally planned to use Dr. Marais as a damages expert to respond to Mr. Frazee, but decided to instead use him as a statistical expert opinion on the GE Safety Database *after* Plaintiffs submitted their expert reports. Ex. 2 ¶ 9. This is confirmed by its letter dated December 31, 2013, which states: "[a]fter Plaintiffs served Thomas Frazee's expert report on August 2, 2013 and Mr. Frazee was deposed on September 17, 2013, GE determined that . . . Dr. Marais would offer statistical analysis as disclosed in GE's Expert Disclosures."  Dkt. 154-10 at 4.  GE

claims that Plaintiffs should have been able to anticipate from its vague disclosure that a statistical expert to rebut Dr. Marias' opinions on the Safety Database would be necessary and instead chose not to utilize one. Dkt. 154 at 33. Yet GE itself did not anticipate until *after* receiving Plaintiffs' expert reports that Dr. Marais would offer statistical opinions on the Safety Database. Plaintiffs are puzzled as to how they should have known that the subject-matter of Dr. Marais' opinions would be different than what was disclosed prior to GE itself knowing the subject matter.

Therefore, although GE goes to great lengths to diminish the importance of this extension, Dkt. 154 at 32, it is relevant here not because denying the extension would have definitely alleviated Plaintiffs' need to seek leave from the Court to serve Dr. Wyner's expert report, but rather because it establishes GE's misrepresentations regarding the nature and purpose of Dr. Marais' testimony. Further, had GE been forthcoming in its initial disclosures about its plan to use Dr. Marais to make an affirmative argument regarding the statistical soundness of the safety database—an argument that, up until receiving Dr. Marais' report, Plaintiffs would have had no way to anticipate being in issue—then Plaintiffs *may* have had the opportunity to designate a statistical rebuttal expert prior to the deadline under the Court's Scheduling Orders.

**C.    Dr. Marais' Report Makes False Assertions Which, Left Unrebutted, Would Severely Prejudice Plaintiffs**

In Dr. Marais' report on November 5, 2013 and deposition on December 17 and 18, 2013, it became clear that his opinion was solely based on inaccurate statistical representations, and that he did not in any way intend to rebut Mr. Frazee's

6

damages testimony.  Instead, Dr. Marais proceeded to offer a statistical analysis substantially mischaracterizing Plaintiffs' claims that is "highly misleading and unhelpful from a practical perspective."  Expert Report of Abraham J. Wyner, Ph.D., Ex. 3 ¶ 5.  As summarized by Dr. Wyner, Dr. Marais "ascribes to Plaintiffs' experts opinions that they do not have in an attempt to undermine their reliance on the GE Microwave ('MWO') Safety Database." *Id.* ¶ 6.

Rather than immediately designate a rebuttal expert upon receipt of Dr. Marais' report, Plaintiffs explored Dr. Marais' opinions at deposition in order to determine whether it was necessary to retain another expert. Ex. 2 ¶ 8.  Accordingly, prior to Dr. Marais' deposition, Plaintiffs consulted with Dr. Wyner about certain methodologies employed by Dr. Marais.  *Id.*  Based on this consultation, Plaintiffs inquired about claims made by Dr. Marais that were highly suspect.  *Id.*  However, Dr. Marais largely doubled-down on the assertions made in his report, offering little factual support in the process.  For example, Dr. Marais admitted that his report failed to take into consideration the question of "practical significance" as opposed to "statistical significance."  But he insisted that this was irrelevant to his opinion that the Plaintiffs' scientific experts were giving opinions th143003at were unreliable based on his analysis of statistical significance.  Ex. 8, Deposition Transcript of Dr. M. Laurentius Marais, at 282-84.  Only when they were faced with Dr. Marais' testimony did Plaintiffs deem it necessary to retain an expert to rebut this fallacious "expert" testimony.  Ex. 2 ¶ 8.

Plaintiffs will seek to exclude Dr. Marais' testimony based on Dr. Wyner's opinions.  However, should the Court decide that Dr. Marais' testimony may be

presented at trial, Dr. Wyner's testimony will then be particularly important to explain to the jury why Dr. Marais' report is misleading.  Therefore, striking Dr. Wyner's expert report would severely prejudice Plaintiffs.

> **D.     The Parties' Communications Subsequent To Dr. Marais' Deposition Further Establish The Need For A Rebuttal Expert**

Plaintiffs first raised the issue of designating a statistical rebuttal expert during a meet and confer with GE via telephone on December 20, 2013.  Plaintiffs made every effort to come to a consensus with GE regarding the need to disclose a rebuttal statistical expert.  On December 26, 2013, Plaintiffs shared their concerns via a letter about Dr. Marais' unanticipated statistical opinion going unrebutted and asked GE to consent to the disclosure of a rebuttal expert.  Dkt. 154-9.  On December 31, 2013, GE responded that it believed "Plaintiffs' request is unfair and improper" largely because "it appear[ed] to [GE] that the motivating factor in Plaintiffs' late request is to postpone the upcoming class briefing." Dkt. 154-10 at 4. In a meet and confer via telephone during the week of January 5, 2014, the parties further discussed the issue, and Plaintiffs assured GE that submitting Dr. Wyner's report would not delay the filing of their motion for class certification, but GE still would not consent to the disclosure. Ex. 2 ¶ 10.  Because Plaintiffs still intended to disclose Dr. Wyner and wanted to provide notice to the Court and GE as soon as possible, Plaintiffs provided GE with their Third Amended Initial Expert Disclosure on January 9, 2014. Dkt. 152-4.

On January 10, 2014, GE responded via letter that it was its position that Plaintiffs' Third Amended Initial Expert Disclosure was untimely, and requested that

Plaintiffs either withdraw it or have a meet and confer conference no later than January 14, 2014 to discuss.  Dkt. 152-5 at 2, 3.  Plaintiffs responded via letter on January 13, 2014 asking GE to reconsider its position and stated "If GE is still not inclined to consent, we should have a meet and confer sometime this week." Dkt. 152-6 at 3.  This meet and confer occurred via telephone on Friday, January 17, 2014. Ex. 2 ¶ 11; *see also* Cellini Declaration, Ex. 4 ¶ 2; Haac Declaration, Ex. 5 ¶ 2; Silver Declaration, Ex. 6 ¶ 2.  During this conference, GE stated its intent to file a motion to strike Dr. Wyner's designation that day, and Plaintiffs stated their intent to file a motion for leave to disclose Dr. Wyner—which had already been drafted—on either the same day, Friday, January 17, 2014, or on the following Monday, January 20, 2014.  Ex. 2 ¶ 12; Ex. 4 ¶ 3; Ex. 5 ¶ 3; Ex. 6 ¶ 3.  GE has since made the assertion that "[d]uring that meet and confer conference . . . Plaintiffs' counsel, for the first time, advised GE that Plaintiffs intended to file a motion regarding Dr. Wyner, but would not file on January 17, 2014.  Notwithstanding such advice, Plaintiffs filed their Motion to Allow Rebuttal Expert Witness on January 17, 2014."  Dkt. 154 at 12. This is false.  Plaintiffs never made any such representations.  *See* Ex. 2 ¶ 12; Ex. 4 ¶ 3; Ex. 5 ¶ 3; Ex. 6 ¶ 3.

Plaintiffs sought to rectify this error via a January 21, 2014 email to GE requesting that GE file a correction with the Court.  *See* E-mail Correspondence Between H. Zarareei and J. Munn Schebel, Jan. 21-22, 2014, Ex. 7 at 2-3. GE responded on January 22, 2014 that they "st[ood] behind the statement made in GE's Motion and Brief regarding our meet and confer call last Friday, January 17, 2014." *Id.* at 1.  Instead of fixing its last inaccurate statement, GE made another

mischaracterization of the facts, claiming that prior to that call Plaintiffs "had not previously requested a meet-and-confer."  Dkt. 155 at 2-3.  The parties met and conferred extensively regarding this topic, and Plaintiffs specifically requested a meet-and-confer on December 13, 2014, Dkt. 152-6 at 3, which occurred on December 17, 2014—before they filed their motion.

## II.    THE COURT SHOULD NOT STRIKE PLAINTIFFS' REBUTTAL EXPERT WITNESS

GE places much weight on its argument that Plaintiffs' Third Amended Expert Disclosure is not specifically allowed for by the Court's Scheduling Orders.  Dkt. 154 at 21-23.  However, Plaintiffs have never disputed this—in fact, it is the very reason that Plaintiffs have sought *leave* from this Court to designate Dr. Wyner as a rebuttal expert to Dr. Marais.  Granting such leave is soundly within the Court's authority and is strongly warranted here in light of this case's procedural history.

The Court has inherent authority over scheduling orders. Fed. R. Civ. P. 16(b)(1).  This includes modifying the timing of expert disclosures and other appropriate matters.  Fed. R. Civ. P. 16(b)(3)(B).  However, when a Scheduling Order is silent on timing for rebuttal experts, it is within the Court's discretion to apply the Federal Rule of Civil Procedure's default deadline under 26(a)(2)(D)(ii), which states:

> A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made: . . . if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by

another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.[1]

If a party does not comply with Rule 26(a)(2)(D)(ii), then Rule 37(c)(1) applies:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, ***unless the failure was substantially justified <u>or</u> is harmless***.

Fed. R. Civ. P. 37(c)(1) (emphasis added).  Therefore, although Plaintiffs here have requested leave to submit their rebuttal expert outside the 30 days allotted for by the Federal Rules of Civil Procedure, their late request is both substantially justified *and* harmless, and therefore should not be struck.

### A.     Rule 26(a)(2)(D)(ii) Should Be Applied To This Case

Because the Scheduling Orders in this case are silent on rebuttal experts, the Court should apply Rule 26(a)(2)(D)(ii).  In addition, Dr. Wyner is a proper rebuttal expert within the scope of the rule.

### 1.     Where A Scheduling Order Is Silent On Rebuttal Experts, Rule 26(a)(2)(D)(ii) Should Be Applied

GE claims that where a scheduling order only makes mention of deadlines for designating experts and does not specifically set deadlines for designating rebuttal experts, the order must be interpreted not to allow for any rebuttal experts to be disclosed under any circumstances.  Dkt. 154 at 22.  This is incorrect. Indeed, this

---

[1] Prior to the 2010 amendments to the Federal Rules of Civil Procedure, this rule was Fed. R. Civ. P. 26(a)(2)(C), which was substantively the same.  Therefore, cases discussing this rule prior to 2010 may refer to it under its pre-2010 number.

Court has previously found that if a scheduling order is silent as to rebuttal reports, it should not exclude them and Rule 26(a)(2)(D)(ii) should supply the default deadline:

> Had the court found that Ms. Diegel qualified as an expert, the court would be inclined to find that (1) in the absence of any rebuttal deadline imposed in the January 27, 2005 "Scheduling Order," the default rule allowing 30 days applied . . . and (2) Plaintiff's proposed expert report, submitted five days beyond the 30 day deadline may have been untimely, but such untimeliness would not justify the harsh sanction [of striking the witness] requested by Defendant.

*Srock v. United States*, 04-CV-72788-DT, 2006 WL 1795095, at *3 n.1 (E.D. Mich. June 28, 2006); *see also, e.g.*, *Allen v. Dairy Farmers of Am., Inc.*, 5:09-CV-230, 2013 WL 211303, at *1 (D. Vt. Jan. 18, 2013) (citations omitted) (stating that "[t]he Scheduling Order's silence with respect to the filing of rebuttal reports does not necessarily constitute an exclusion of rebuttals" and thus applying 26(a)(2)(D)(ii) in allowing late report); *Syringe Dev. Partners L.L.C. v. New Med. Tech., Inc.*, IP98-1726CMS, 2001 WL 403232, at *36 n.7 (S.D. Ind. Feb. 9, 2001) ("Absent a stipulation from the Court or an agreement by the parties to the contrary, Rule 26 would govern disclosure of rebuttal experts and their reports.").

The case relied on by GE for the proposition that scheduling orders that are silent on rebuttal experts prevent their disclosure, *Rojek v. Catholic Charities of Jackson, Inc.*, is inapposite due to the specific language of the scheduling order in question in that case, which stated that "[n]o witness, expert or non-expert, may be called for trial unless that witness's name is listed by the respective dates set forth herein without order of the Court upon showing that the witness sought could not . . . reasonably have been listed as of this date."  No. 08-14492, 2010 WL 2232240, at

12

*18-19 n.4 (E.D. Mich. May 27, 2010). Here, the Scheduling Order does not contain any such language. And further, even if it did, Plaintiffs have demonstrated why, due to GE's misrepresentations about the nature of Dr. Marais' testimony, Dr. Wyner could not have been disclosed at an earlier date.

In addition, GE conflates this Court's *ability* to exclude a rebuttal expert report not specifically contemplated by the Scheduling Order with a *requirement* for it to be excluded. *Eckelkamp v. Beste*, cited by GE, merely found that the court has the *discretion* to interpret the parameters of its scheduling orders. 315 F.3d 863, 872 (8th Cir. 2002) (in reviewing district court's decision for abuse of discretion, circuit court found that "the court was *entitled* to hold the parties to that order.") (emphasis added).[2] However, as demonstrated by this Court's opinion in *Srock* and other courts' opinions on this issue, it is well within this Court's discretion to apply Rule 26(a)(2)(D)(ii), and is particularly appropriate here where GE's misrepresentations caused the need for Plaintiffs to add a statistical rebuttal expert who they could not have earlier known would be necessary.

---

[2] In addition, other cases cited by Defendants for the proposition that scheduling orders silent on rebuttal witnesses foreclose their disclosure are factually different from this case. *See Shaw v. Am. Honda Motor Co., Inc.*, CIV.A. 10-38, 2010 WL 4687836, at *1 (E.D. La. Nov. 10, 2010) (inapposite because Plaintiffs in that case had not yet even submitted an *initial* expert report within the deadline); *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002) (inapposite because court had already allowed some "second-tier" rebuttal experts and was refusing to allow a "third-tier"); *Masler v. Marshall Fields*, CIV. 06-4917PAMJSM, 2007 WL 6815352, at *4 (D. Minn. Dec. 21, 2007) (inapposite because scheduling order explicitly allowed for rebuttal experts submitted by some parties but not others).

## 2.   Dr. Wyner Is A Proper Rebuttal Expert Within Rule 26(a)(2)(D)(ii)'s Parameters

GE claims that Dr. Wyner is not a proper rebuttal expert because "in light of Plaintiff's description of Dr. Wyner's anticipated testimony, it is apparent that they seek to have Dr. Wyner offer new affirmative opinions on Plaintiffs' behalf." Dkt. 154 at 26.  This false assertion is apparently wholly based on three words in Plaintiffs' Third Amended Disclosure:

> Dr. Wyner is expected to offer testimony on, ***among other things***, the following topics: 1. Rebuttal testimony regarding the opinions of Dr. M. Laurentius Marais as reflected in Dr. Marais' deposition testimony and declaration.

Dkt. 152-4 at 4, D (emphasis added). Plaintiffs' utilization of the phrase "among other things" does *not* demonstrate an intent to offer Dr. Wyner's opinions on any other issues or to introduce new affirmative opinions.  Rather, it is standard language used to indicate that an expert disclosure provides only a summary of the expert's testimony.  *Cf. United States v. Cerna*, CR 08-0730 WHA, 2010 WL 2347406, at *2 n.1 (N.D. Cal. June 8, 2010) (noting that using the phrase "among other things" in expert disclosure "serves only to provide notice to defendants that the summaries may not specify every detail of the testimony").  Dr. Wyner's report has now been served on GE, and it solely responds to Dr. Marais' inaccurate testimony. *See* Ex. 3.

GE also claims that Dr. Wyner's report will be used to "bolster" Plaintiffs' case. Dkt. 154 at 26-27.  Dr. Wyner's report cannot be characterized as "bolstering" because it is responsive to new statistical analysis that was unanticipated, unlike in the cases cited by GE. *See, e.g.*, *In re Air Crash Disaster*, 86 F.3d 498, 528 (6th Cir. 1996) ("Rebuttal testimony is responsive to new information by the other party.  The

testimony of McDonnell Douglas that its plane complied with FAA regulations was not 'new' to Northwest."); *contra. Madison Capital Co., LLC v. S & S Salvage, LLC*, 4:08-CV-00134-JHM, 2011 WL 195639, at *4 (W.D. Ky. Jan. 19, 2011) ("The Court will not allow them to now introduce expert testimony belonging in its case-in-chief masquerading as rebuttal expert testimony.") Dr. Wyner's report does not apply to Plaintiffs' case-in-chief because Plaintiffs' case-in-chief does not rely in any way on a statistical analysis. GE asserts that "Plaintiffs initially disclosed an expert purportedly qualified to offer opinions regarding 'statistical analysis' but chose not to use him. The 'rebuttal' strategy is an improper attempt to put forward expert testimony that they now recognize should have been provided initially." Dkt. 154 at 26. As discussed previously, any suggestion that Dr. Woods was ever Plaintiffs' statistical expert is simply false. However, even if it were true, it would still be proper for Plaintiffs to designate a different statistical rebuttal expert to respond to Dr. Marais. *See Haymer v. Countrywide Bank, FSB*, 10 C 5910, 2013 WL 5162286, at *3 (N.D. Ill. Sept. 13, 2013) ("[T]he mere fact that Plaintiff has to rely on a new expert to respond to Dr. Swantek's findings is not evidence that the report will constitute improper bolstering.").

### B.      Dr. Wyner's Rebuttal Is Substantially Justified And Harmless

Because Rule 26(a)(2)(D)(ii) applies, the Court should allow Dr. Wyner's testimony because Plaintiffs' failure to meet the 30-day deadline is substantially justified *or* harmless. *See Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (quoting *Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir. 1996)).

15

Although the Sixth Circuit has not enumerated specific factors to consider in whether a late filing is substantially justified or harmless, courts in other circuits when addressing the issue of rebuttal experts submitted outside the 30-day deadline have applied multifactor tests. For example, courts in the Third and Seventh Circuits weigh four factors: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *Haymer*, 2013 WL 5162286, at *4 (quoting *David v. Caterpillar, Inc.,* 324 F.3d 851, 857 (7th Cir. 2003)); *Bowman v. Colomer*, CIV.A. 09-1083, 2011 WL 3812583, at *1 (W.D. Pa. Aug. 29, 2011) (citing *Nicholas v. Pennsylvania State University,* 227 F.3d 133, 148 (3d Cir. 2000)). Courts in the Second and Eighth Circuits similarly weigh: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997); *see also Buhr Bros., Inc. v. Michaelis*, 2013 WL 1501571, at *2 (D.S.D. Apr. 11, 2013) (citing *Patterson v. F.W. Woolworth Co.,* 786 F.2d 874, 879 (8th Cir. 1986)).

Considering these factors establishes that allowing Dr. Wyner as a rebuttal expert to Dr. Marais' statistical conclusions is substantially justified in light of Dr. Marais' unanticipated and inaccurate opinions. It is further harmless to GE because Plaintiffs have timely served Dr. Wyner's report, submitted their class certification

16

brief, and otherwise continued on schedule.  In addition, Plaintiffs have already expressed a willingness to make  any adjustments to the schedule necessary for GE to timely depose Dr. Wyner and  respond to Plaintiffs' motion for class certification.

### 1.     Plaintiffs' Disclosure Of Dr. Wyner is Substantially Justified

Courts have held that a party is substantially justified in making a late disclosure of a rebuttal expert witness where a need arises that could not have been anticipated before reviewing and critiquing a defendant's expert report and challenging the expert's methodology. *See Haymer*, 2013 WL 5162286, at *3.  This is exactly the case here, and is particularly true since Plaintiffs could not have possibly known of the need for a rebuttal expert on statistics until after receiving Dr. Marais' report and taking his deposition.  *See, e.g.*, *Powell v. Tosh*, 276 F.R.D. 553, 559 (W.D. Ky. 2011), *vacated on other grounds*, 5:09-CV-121, 2011 WL 7463961 (W.D. Ky. Dec. 21, 2011) (finding plaintiff justified in waiting to complete deposition of defendant's expert before designating a rebuttal expert); *Fuqua v. United States*, 5:09-CV- 212, 2011 WL 4742658 (W.D. Ky. Oct. 7, 2011) (same).

GE claims that they did not engage in "gamesmanship" and that Plaintiffs' delay in disclosing Dr. Wyner therefore cannot be justified (Dkt. 154, p. 30-32).[3]

---

[3] Defendants also claims that Plaintiffs did not make allegations of "gamesmanship" until their January 13, 2014 letter.  Dkt. 154 at 31-32, n. 14.  This is false. Plaintiffs' December 26, 2013 letter made claims of Defendant's misrepresentations consistent with those throughout this brief (for example, "[b]ased on your initial designations, which identified Dr. Marais as providing expert testimony on statistics and damages, together with our conversation, I assumed that Dr. Marais' opinions would be responsive to the opinions of our damages expert Thomas Frazee.  Otherwise, why

However, as discussed previously, GE continuously misrepresented Dr. Marais' role as an expert witness up until his deposition.  Further, GE makes the illogical assertion that "it simply does not matter what Plaintiffs knew and when they knew it."  Dkt. 154 at 32 n.14.  When Plaintiffs knew of Dr. Marais' inaccurate statistical analysis *absolutely* matters because GE's misrepresentations up until that point are the reason why Plaintiffs are now substantially justified in disclosing a statistical rebuttal expert.

### 2.    Plaintiffs' Disclosure Of Dr. Wyner Is Harmless

Because the late disclosure of Dr. Wyner's report was substantially justified, the Court should deny GE's motion to strike based on the "substantially justified or harmless" standard.  However, Plaintiffs have *also* demonstrated that the disclosure is harmless.  While GE argues for an overly-strict interpretation of the "harmless" standard, Plaintiffs urge a more rational reading.

GE cites *Vaughn v. HomeGoods, Inc*. for the proposition that harmlessness requires "an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party."  07-CV-15085, 2008 WL 4239505, at *4 (E.D. Mich. Sept. 11, 2008).  However, it is unclear from *Vaughn* what "honest mistake" means.  Read in conjunction with another case cited by GE, *SG Indus., Inc. v. RSM McGladrey, Inc.,* an "honest mistake" appears to be the opposite of "a calculated, deliberate decision to forego retention of an expert."  No. 10-CV-11119, 2011 WL 6090247, at *10 (E.D. Mich. Dec. 7, 2011).  Cases from other districts have similarly interpreted the harmlessness standard to mean that the party making the late

--------------------

would you need to wait for Mr. Frazee's deposition to submit Dr. Marais' report?").
Dkt. 154-9 at 2.

disclosure did not do so willfully or in bad faith. *See Haymer*, 2013 WL 5162286, at *5 (finding late disclosure harmless where "there is no evidence of willfulness or any attempt to seek a tactical advantage by the delay"); *Bowman*, 2011 WL 3812583, at *1. Courts have also found harmlessness where no prejudice to the opposing party or disruption to trial can be demonstrated, which is typically the case where the rebuttal expert will be relying on facts already disclosed in discovery, as is the case here. *See Powell*, 276 F.R.D. at 559.

Here, it is clear that Plaintiffs have not acted in bad faith, but rather are merely requesting to designate a much-needed rebuttal expert as soon as it became apparent that one is necessary and would be helpful to a jury for purposes of rebutting Dr. Marais' unanticipated and inaccurate opinions. Plaintiffs are not seeking a tactical advantage, as they are not asking for any delays and, indeed, timely submitted their motion for class certification on January 30, 2014. Dkt. 157.

GE's only arguments for why the late disclosure of Dr. Wyner would be harmful is that that it would cause excessive delay, Dkt. 154 at 35, and that his opinions may "force[ ] [GE] to re-examine its theory of defense." Dkt. 154 at 34. First, any small amount of delay caused by Dr. Wyner's disclosure is not excessive. Plaintiffs identified Dr. Wyner only 35 days after the 30-day deadline under Rule 26(a)(2)(D)(ii), and served his report just 56 days after the deadline and only 43 days after Marais' deposition. Short delays such as this are often considered to be insubstantial, especially in cases such as this one that have been pending for many years. *See, e.g.*, *Buhr Bros.*, 2013 WL 1501571, at *3; *Powell*, 276 F.R.D. at 559; *Bowman*, 2011 WL 3812583, at *1 (late expert disclosure harmless where "although

19

the Defendants may have been somewhat surprised by the submission of a rebuttal

expert, they received the report approximately five months prior to trial").

Second, GE apparently seeks to exclude Dr. Wyner's opinions as because they

would demonstrate why Dr. Marais' opinions should be excluded.  However, it is

well-established that evidence is not *prejudicial* to one party merely because it is

*helpful* to establishing the case of another.  *E.g.*, *Koloda v. Gen. Motors Parts Div.,*

*Gen. Motors Corp.*, 716 F.2d 373, 377-78 (6th Cir. 1983) (reasoning that evidence

must be "more than damaging to the adverse party" to be prejudicial; there must also

be unfairness).  This is particularly true where, as here, the new expert is merely

serving to rebut opinions already known to the defendant. *See Haymer*, 2013 WL

5162286, at *4 (N.D. Ill. Sept. 13, 2013) ("Since Dr. Liu continues to serve as

Plaintiff's primary expert and the rebuttal report will be limited to responding to Dr.

Swantek's findings, [defendant] has not been prejudiced by having 'spent the last

eight months preparing a defense based on the expert testimony provided by Dr.

Liu.'").  Further, where the potential for prejudice can be cured by, for example,

allowing a party to depose the new rebuttal expert and providing an extension of time

if necessary, this weighs in favor of allowing late disclosure.  *See Haymer*, 2013 WL

5162286, at *4; *Buhr Bros.*, 2013 WL 1501571, at *3; *Bowman*, 2011 WL 3812583,

at *1.

Here, GE has bemoaned the potential for prejudice if Plaintiffs delayed class

certification.  Dkt. 154 at 35.  But Plaintiffs submitted their class certification motion

on time. Dkt. 157.  Further, GE has requested and Plaintiffs have agreed to a

stipulation that vacates GE's 21-day response deadline to the motion for class

certification.  Dkt. 156 ¶ 5.  As the stipulation states, "[t]his case was initially filed on May 19, 2009 and the parties have been in active litigation and discovery since that time. The parties have produced millions of documents; exchanged nine different expert reports; taken dozens of depositions, including party, non-party, and expert depositions." *Id.* at 1.  Therefore, there is no harm in the parties' agreement to meet and confer after the Court's ruling on the pending motions for leave to allow Dr. Wyner as a rebuttal expert and motion to strike Dr. Wyner, and to agree to dates for the filing of GE's response to Plaintiffs' motion for class certification and Plaintiffs' reply at that time. *Id.* ¶ 5.  GE currently has no deadlines in this case, and the Court's decision on whether to allow for Dr. Wyner's disclosure will not in any way harm its ability to respond to the motion for class certification, as the issue will be resolved prior to the deadline even being set for that response.

Allowing for disclosure of Dr. Wyner's report is not tantamount, as GE states, to "allowing Plaintiffs to 'take a mulligan.'"  Dkt. 154 at 35.  Rather, it is an equitable solution, soundly within the Court's discretion, to the problem of GE's last-minute, unanticipated proffering of Dr. Marais' inaccurate and misleading testimony.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant General Electric Company's Motion to Strike Plaintiffs' Third Amended Initial Expert Disclosure And Preclude Testimony of Plaintiffs' New Expert Abraham J. Wyner.  Plaintiffs further request that the Court grant Plaintiffs' Request for Leave to Disclose Rebuttal Expert Abraham J. Wyner, Ph.D. for the Purpose of Rebutting the

Opinions of Defendant's Expert M. Laurentius Marais as reflected in Dr. Marais'

deposition testimony and declaration, Dkt. 152.

February 3, 2014.                           Respectfully submitted,


                                            /s/ Hassan A. Zavareei
                                            Hassan A. Zavareei
                                            TYCKO & ZAVAREEI LLP
                                            2000 L Street, N.W., Suite 808
                                            Washington, D.C.  20036
                                            (202) 973-0900
                                            hzavareei@tzlegal.com

                                            Ann L. Miller (P43578)
                                            THE MILLER LAW FIRM, P.C.
                                            950 West University Drive, Suite 300
                                            Rochester, MI  48307
                                            (248) 841-2200
                                            alm@millerlawpc.com

                                            *Attorneys for Plaintiffs Timothy*
                                            *Hennigan, Aaron McHenry, and*
                                            *Christopher Cocks*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on this day, Plaintiffs' Response In

Opposition to Defendant General Electric Company's Motion to Strike Plaintiffs' Third

Amended Initial Expert Disclosure And Preclude Testimony of Plaintiffs' New Expert

Abraham J. Wyner was filed and served upon all ECF recipients.  Copies of exhibits

filed under seal have been provided via electronic mail and U.S. mail.


Dated:  February 3, 2014                        /s/ Hassan A. Zavareei
                                                Hassan A. Zavareei
                                                TYCKO & ZAVAREEI LLP
                                                2000 L Street, N.W., Suite 808
                                                Washington, D.C.  20036
                                                (202) 973-0900
                                                (202) 973-0950 *facsimile*
                                                hzavareei@tzlegal.com