UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VICTORIA ROBINSON, AARON MCHENRY,
and CHRISTOPHER COCKS,
individually and on behalf of themselves
and all others similarly situated,

       Plaintiffs,

                                              Honorable Victoria A. Roberts

v.                                       Case No. 09-cv-11912

GENERAL ELECTRIC COMPANY,

       Defendant.
_____/

**ORDER:**

    **1.**      **DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL [ECF NO. 196]**

    **2.**      **GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR LEAVE TO SUBMIT A MODIFIED CLASS DEFINITION AND FOR POST-CERTIFICATION DISCOVERY [ECF NO. 285]**

    **3.**      **DENYING GE'S MOTION TO STRIKE PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO SUBMIT A MODIFIED CLASS DEFINITION AND FOR POST-CERTIFICATION DISCOVERY [ECF NO. 288]**

**I.**    **Introduction**

On October 23, 2015 and by stipulation of the parties, Victoria Robinson of

Michigan substituted as the named plaintiff for the Michigan and Nationwide class in this

litigation alleging defective microwave ovens ("MWOs").  Robinson, along with

Christopher Cocks of California and Aaron McHenry of Ohio, seek certification of a

class action against General Electric Company ("GE").

1

The Court held a hearing on class certification on October 23, 2015 (the "Hearing").  At the outset, Plaintiffs' counsel stated Plaintiffs now seek certification only of a California class; this was the general focus of their arguments.

Three motions are before the Court: (1) Plaintiffs' Motion for Class Certification and Appointment of Class Counsel (ECF No. 196); (2) Plaintiffs' Motion for Leave To Submit A Modified Class Definition and For Post-Certification Discovery (ECF No. 285); and (3) GE's Motion to Strike Plaintiffs' Reply in Support of Motion for Leave to Submit a Modified Class Definition and for Post-Certification Discovery (ECF No. 288).

Plaintiffs' Motion for Leave to Submit a Modified Class Definition (ECF No. 285) is **GRANTED IN PART** and **DENIED IN PART**.  The Court accepts the modified class definition Option 2.  But, for reasons stated below, even with Plaintiffs' modified class definition, they fail to meet the requirements for a class action under FED. R. CIV. P. 23(a) or 23(b) ("Rule 23(a)" and "Rule 23(b)").  Therefore, Plaintiffs' Motion for Class Certification (ECF No. 196) is **DENIED** without prejudice.  As outlined below, the remainder of Plaintiffs' classes and causes of action are held in abeyance.

Plaintiffs' request for post-certification discovery in their Motion for Leave to Submit a Modified Class Definition (ECF No. 285) is **DENIED**.

GE's Motion to Strike Plaintiffs' Reply (ECF No. 288) is **DENIED**.

## II. Plaintiffs' Motion for Leave to Submit a Modified Class Definition and for Post-Certification Discovery (ECF No. 285)

### A. Procedural Background

Plaintiffs filed a Third Amended Complaint alleging GE sold defective MWOs. Plaintiffs allege all MWOs were defective at the time of sale because they have a

2

propensity to "self-start" and lack adequate safety features.

Before the Hearing began, there were five causes of action: (1) express warranty; (2) implied warranty of merchantability; (3) violation of the Magnuson-Moss Warranty Act; (4) violation of state consumer protection laws; and (5) unjust enrichment.

At the Hearing, Plaintiffs proposed and/or accepted a number of concessions: (1) certify a California class only and hold the Nationwide, Michigan and Ohio classes in abeyance, Transcript of October 23, 2015 Oral Argument 36: 9-13; (2) change the beginning of the class period from January 2000 to January 2002, Tr. 114: 23; (3) switch from an ownership class to a purchaser class, Tr. 111: 22; (4) withdraw the express warranty cause of action, Tr. 112: 17; and (5) exclude buyers who purchased MWOs primarily for commercial or business purposes, Tr. 111: 20. Under Plaintiffs' proposals and concessions, the class is now confined to consumer purchasers who purchased MWOs for personal, family or household use. Tr. 111: 20.

After the Hearing, Plaintiffs' proposed class consists of all persons residing in the State of California who purchased a GE-branded MWO manufactured since January 2002, with the following claims: breach of implied warranty of merchantability under California's Song-Beverly Consumer Warranty Act, CAL. CIV. CODE § 1790 *et seq.* (Count III); violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.* (Count IV); violation of state consumer protection laws (Count V); and unjust enrichment (Count VI). The state consumer protection laws are California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.* ("UCL"), and California's Consumers Legal Remedies Act, CAL. CIV. CODE § 1770 *et seq.* ("CLRA").

Because Plaintiffs request the other state classes, the nationwide class and the

3

remaining causes of action be held in abeyance pending decision pertaining to the

California class, this opinion addresses only issues surrounding the California class.

**B.    Modifications to Class Definition**

**1.    Proposed Modifications in Motion for Leave to Submit a Modified Class Definition and for Post-Certification Discovery**

Plaintiffs request to modify the class definition. They offer two alternative

definitions.  Option 1 represents the changes proposed at the Hearing:

> All residents of the State of California who purchased a GE-branded microwave oven with one of the model numbers identified in Addendum attached hereto, manufactured since 2002 and purchased in California for primarily personal, family, or household purposes, and not for resale.

> According to Plaintiffs, Option 1 includes 168 models encompassing

approximately 4.3 million MWOs.

Option 2 is the same as Option 1, except Plaintiffs limit the models to those for

which there are at least ten reported self-starts, at least one of which involves smoke or

fire, and a reported self-start rate that exceeds "Six Sigma." Mot. Mod. Class Defin. 17,

Nov. 17, 2015, ECF No. 285. Plaintiffs say Six Sigma is GE's own standard reported to

consumers for determining whether a product is defective**.** Option 2 covers 60 models

and approximately 2.6 million MWOs. *Id.* at 10.

The Court accepts Option 2 as the class definition.

**2.    What is the Product Defect?**

Finalizing this opinion has been made difficult by Plaintiffs' shifting - and at times

blurred - characterization of the product defect. Often, Plaintiffs characterize the MWOs

as defective because of *both* propensity to self-start *and* the lack of safety mechanisms.

4

However, absence of safety features has become their main focus.

### a.    Self-Starts

In the Motion for Class Certification, Plaintiffs discuss self-starts frequently, arguing that *the propensity for GE MWOs to self-start* is a substantial safety problem, particularly because self-start incidents could occur in the middle of the night or while the consumer is not home. Pls.' Br. Mot. Class Certif. 39, Sept. 18, 2014, ECF No. 197, emphasis added. Plaintiffs' experts address the issue of self-starts extensively in their reports.  In support of its Motion for Class Certification, Plaintiffs rely on four experts, two of whom are engineers, Aris K. Silzars ("Silzars") and John E. Gerling ("Gerling").

Earlier in this litigation, Gerling concluded that GE MWOs have a design that allows for self-starts to happen. He places emphasis on five elements: (1) a large number of solid state components on the master circuit board, the failure of any of which could result in a self-start; (2) membrane type switches on the control panel which become sensitive over time and which can activate without user input; (3) the complexity of the master control circuitry, which provides numerous independent pathways to power MWOs, and the failure of any can result in a self-start; (4) the use of one button cooking; and (5) the manufacture of the printed circuit board and switch panel which provide numerous opportunities for error resulting in failure and self-start. Br. Opp'n Class Certif. Gerling Expert Report 18, ECF No. 225-1.

According to Plaintiffs' experts, the most probable causes for self-starts are the touch panel and associated circuitry, a malfunction of the master control board, or control panel key pad accidental activation, i.e., membrane malfunction. *Id.* at 20; Br. Opp'n Class Certif. Silzars Expert Report 18, ECF No. 224-12. Gerling says GE is in the

5

best position to determine the exact cause of self-starts and based on his review of GE corporate documents, it does not appear to him that GE has made such a determination. Br. Opp'n Class Certif. Gerling Expert Report 20, ECF No. 225-1.

Plaintiffs' Third Amended Complaint supports the Court's conclusions that figuring out exactly what the claimed defect is, has been difficult. The Third Amended Complaint bears out a diffuse theory of liability, and suggests the following as defects: heat sensors, ¶ 21); magnetrons, ¶¶ 23 and 29; the control panel, ¶ 50; a defect that causes the MWO to begin unassisted and may result in smoke or fire, ¶ 22; and a defect that causes the MWOs to spontaneously catch fire, ¶ 35. Third Am. Compl., June 8, 2010, ECF No. 56.

Despite the fact that Plaintiffs' experts extensively discuss self-starts in their reports, Plaintiffs now say that the root cause of self-starts is largely irrelevant. Plaintiffs said they intend to prove that there are many self-starts by producing evidence from the Safety Database[1] of frequent self-starts. Tr. 108: 1-4. According to Plaintiffs, it doesn't matter why the MWOs self-start; they concede that there could be many reasons, including manufacturing processes. Tr. 118: 1-3.

### b.    Inadequate Safety Mechanisms

In light of Plaintiffs' shifting arguments concerning the claimed defect, the Court asked Plaintiffs at the Hearing whether the case was now narrowed to focus only on whether GE MWOs lack adequate safety features. Plaintiffs replied that whether the

---

[1] GE says the Safety Database is an archive of unverified information that relates to potential safety concerns.  The information comes from a variety of sources, including customer complaints, insurance claim reports, complaints submitted to the Consumer Product Safety Commission ("CPSC") and reports from retailers.

MWOs self-start "inheres in the case" because all MWOs have a propensity to self-start - "[t]hat's the -- part of the reason why they're defective. If there was no propensity to self-start, we wouldn't need the safety mechanisms. So they do interrelate, *but the focus is on the absence of safety mechanisms and that's true for all of the models*." Tr. 107: 16-23, emphasis added.

In addition to accepting Plaintiffs' modified class definition Option 2, the Court also accepts Plaintiffs' current allegation of a common design flaw: lack of adequate safety mechanisms to prevent fire in the event of a self-start.  Accordingly, the Court focuses on safety mechanisms as it considers whether Plaintiffs meet the test for class certification.

### III.    Motion for Class Certification

#### A.    Legal Standard

"Class certification is appropriate if the court finds, after conducting a 'rigorous analysis,' that the requirements of Rule 23 have been met." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851 (6th Cir. 2013). The Court has substantial discretion in determining whether to certify a class; it possesses the inherent power to manage and control its own pending litigation. *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 559 (6th Cir. 2007).

"[C]lass action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). To obtain class certification, plaintiffs must show: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the

class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a).

 "These four requirements—numerosity, commonality, typicality, and adequate representation—serve to limit class claims to those that are fairly encompassed within the claims of the named plaintiffs because class representatives must share the same interests and injury as the class members." *In re Whirlpool Corp. Front Loading Washer Products Liab. Litig.*, 722 F.3d at 850-51 (citing, *Dukes*, 131 S. Ct. at 2550).

In addition to the four prerequisites of Rule 23(a), the proposed class must also meet at least one of the three requirements listed in Rule 23(b). *Dukes*, 131 S. Ct. at 2548; *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 509 (6th Cir. 2015).

Plaintiffs seek certification under Rule 23(b)(3), which requires the district court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members" and that the class action is "superior to other available methods" to adjudicate the controversy fairly and efficiently. FED. R. CIV. P. 23(b)(3). The burden is on Plaintiffs to prove that the requirements of class certification are met. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). As class representatives, Plaintiffs must establish that they possess the same interest and suffered the same injury as the class members they seek to represent. *Dukes*, 131 S. Ct. at 2550.

Alternatively, Plaintiffs seek class certification under Rule 23(b)(2), which permits certification if the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is

8

appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2).

Importantly, the Court need not analyze the requirements of Rule 23(b) if the requirements of 23(a) are unsatisfied by the Plaintiffs. Because Plaintiffs fail to satisfy Rule 23(a) requirements, the Court does not extensively analyze Rule 23(b). FED. R. CIV. P. 23(b).

## B.   Requirements of Rule 23(a)

### 1.   Numerosity

The first requirement under Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Numerosity is a fact specific inquiry that turns upon such factors as geographic location and the ease of identifying class members. *Marquis v. Tecumseh Products Co.*, 206 F.R.D. 132, 156 (E.D. Mich. 2002). *"*Although not an absolute rule, it generally is accepted that a class of 40 or more numbers is sufficient to satisfy the numerosity requirement." *Crawford v. TRW Automotive U.S. LLC*, No. 06-cv-14276, 2007 WL 851627, *3 (E.D. Mich. March 21, 2007).

Plaintiffs estimate that the Option 2 class has approximately 2.6 million total units. While there is no strict numerical test, "substantial" numbers usually satisfy the numerosity requirement. *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006).

The Court finds the numerosity requirement of Rule 23(a)(1) satisfied.

### 2.   Common Question of Law or Fact

#### a.   Inadequate Safety Mechanisms

Commonality demands that there be questions of law or fact common to the

class. FED. R. CIV. P. 23(a)(2). The relevant inquiry is whether a classwide proceeding

has the capacity to "generate common answers apt to drive the resolution of the

litigation." *Dukes*, 131 S. Ct. at 2551. A class action is not necessarily impermissible if

questions specific to each individual member, such as damages, remain after common

questions of defendant's liability have been resolved. *Sterling v. Velsicol Chem. Corp.*,

855 F.2d 1188, 1197 (6th Cir. 1988). However, the common questions must be

meaningful and significant to the case. *Ham v. Swift Transp. Co.*, 275 F.R.D. 475, 484

(W.D. Tenn. 2011).

To be capable of classwide resolution means that determination of the common

contention will "resolve an issue that is central to the validity of each one of the claims in

one stroke." *Dukes*, 131 S. Ct. at 2551. "In other words, named plaintiffs must show that

there is a common question that will yield a common answer for the class (to be

resolved later at the merits stage), and that common answer relates to the actual theory

of liability in the case." *Rikos*, 799 F.3d at 505.

In their motion, Plaintiffs list the following common issues which they say are

sufficient to establish commonality: whether (1) the GE MWOs are defective; (2) GE

knew its MWOs were defective; (3) GE concealed the defect; (4) GE breached express

warranties relating to their MWOs; (5) GE breached the implied warranty of

merchantability; (6) GE was unjustly enriched by receiving moneys in exchange for

defective MWOs; (7) as a result of GE's conduct, Plaintiffs suffered damages; and (8)

GE should be enjoined from selling defective MWOs. Pls.' Br. Mot. Class Certif. 49,

ECF No. 197.

The Court accepts Plaintiffs' narrowed focus on inadequate safety mechanisms

10

but notes that Plaintiffs' experts mainly discuss TCOs. The question is whether even this narrowed focus as the common question, is sufficient to satisfy the commonality requirement.  The Court concludes it is not.  Simply stated, there is no evidence that a single design flaw pertaining to safety mechanisms is common across all of the models in Option 2. Plaintiffs' failure to identify a single part, system, or even TCO temperature, defeats commonality.

In support of their theory that safety mechanisms are inadequate in the event of a self-start, Plaintiffs rely on the engineering experts already mentioned, Gerling and Silzars. However, large portions of their reports focus on Plaintiffs' now abandoned theory of self-starts as the defect. Plaintiffs are further limited by the Court's *Daubert* rulings. *See* Order Grant Part Den. Part Mot. Exclude Pls.' Expert Aris Silzars, July 31, 2015, ECF No. 259; Order Grant Part Den. Part Mot. Exclude Pls.' Expert John Gerling, July 31, 2015, ECF No. 261.

Gerling says GE MWOs rely on TCOs for protection from a thermal event, but they do not do enough to prevent fires because they are only passive devices that activate only when their contact surfaces reach a certain temperature. Pls.' Br. Mot. Class Certif. 33, ECF No. 197; Gerling Expert Report 23-25, ECF No. 200-3. Gerling defines a TCO as ". . . a thermally activated switch which opens and prevents power from being delivered past the point where the TCO is located in the electrical circuit. TCO activation occurs when the contact surface of the TCO reaches the preset operation temperature." *Id.*  In Gerling's opinion, GE "relies solely upon TCOs" to prevent or limit damage that might result from a self start. *Id.* Importantly, Gerling opines

11

only with respect to TCOs as the inadequate safety mechanism; he does not discuss others.

Silzars also concluded that GE MWOs are defectively designed because safety mechanisms are insufficient if a self-start occurs. Br. Opp'n Class Certif. Silzars Expert Report 8, ECF No. 224-12. Silzars discusses TCOs as one aspect of the safety mechanisms that is inadequate in the event of a self-start. *Id.* at 13. He notes that software was developed to detect touch panel shorts and installed in some models. *Id.* at 19. Silzars says, without identifying model or year, that GE took "corrective action" to fix "a few specific errors." *Id.* at 23.

GE asserts Plaintiffs' approach in defining the defect is problematic. Br. Opp'n Class Certif. 23, ECF No. 224. GE argues that seven manufacturers "utilized a variety of safety features designed to protect against fire; those safety features changed over time (and over the class period); the safety features were neither common to all MWOs nor static." *Id.* at 29 (citing Report of GE Expert Shukri Souri 115-16, ECF No. 224-2).  GE says it gives each manufacturer general guidance about certain capabilities that each model must have, but each manufacturer retains control of the ultimate design of the MWO, including where to place component parts. GE contends that variations affect basic design considerations across all models of GE-branded MWOs, such as how the MWO will be installed and used: "MWOs can be placed on a countertop, installed over an oven range, or built into a kitchen cabinet. … The countertop, over the range (OTR), and built-in units require unique venting design, unique installation hardware, and unique installation procedures."  Br. Opp'n Pls.' Mot Class Certif. 16, Oct. 29, 2014, ECF No. 224.

12

Moreover, GE objects to painting all TCOs with a broad brush: "[t]he total number, location, functionality, ratings, part numbers and predetermined temperature setting of TCOs . . .depend on the product and product application. Various models may include cavity, flame, magnetron, hood, bottom, vent, or fan TCOs."  Br. Opp'n Class Certif. 25, ECF No. 224.  At the Hearing, GE said there are variations among the cavity TCOs even if it is the same model. For example, model JE740 is made by three different manufacturers and placement of the TCOs was not the same. Tr. 84: 16-24.

At the Hearing, GE said TCOs are not the only safety mechanism; GE also uses: (1) wiring; (2) fuses; (3) thermistors – a term that neither GE nor Plaintiffs define and that is not mentioned by either Gerling or Silzars; (4) redundant relays, as well as (5) things it considers safety features such as flameproof materials. Tr.  78: 5-8. GE also says it does not specify a uniform magnetron TCO temperature. Tr. 84: 10-11. The magnetron is the part of the microwave that generates power causing the food to be heated. Br. Opp'n Class Certif. Gerling Expert Report 11, ECF No. 225-1. GE says the temperature ratings for TCOs vary. Tr. 45 at 23, 83 at 24-25).

The Court agrees that Plaintiffs' assertion of the design flaw as inadequate safety mechanisms, is at the highest level of generality.  Of course, if one generalizes to a high enough level, a similarity would always be found; but the Sixth Circuit and other courts have expressly recognized that this is not appropriate. *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) ("It is not every common question that will suffice, however; at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality. What we are looking for is a common issue the resolution of which will advance the litigation."); *Cholakyan v. Mercedes-Benz USA,*

13

*LLC*, 281 F.R.D. 534, 556 (C.D. Cal. 2012).

Plaintiffs' attempts to compare this case to *Whirlpool and Dafflin* is unavailing. *Dafflin* is distinguishable because only two model years were at issue and plaintiff's expert opined that the throttle body in her car was the same in both model year Villager minivans. *Daffin*, 722 F.3d at 854.

And, in *Whirlpool*, plaintiffs identified specific design defects that caused the alleged propensity to malfunction. The court concluded that there was a common question: did the alleged design defects cause mold growth across the "manufacturing spectrum." 722 F.3d at 854. In reaching its decision, the court placed emphasis on the fact that the two platforms are "nearly identical," and while design issues concerned multiple models, most of the differences between models concerned aesthetics. 722 F.3d at 854.

The *Whirlpool* plaintiffs were able to tie their generalized theory to an identified part - the plastic tubs or metal brackets, and specifically, the cavities and crevices - that caused the mold problems.  *In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 302 F.R.D. at 462. Plaintiffs have not done that here. Plaintiffs argue that all MWOs share a common alleged defect: inadequate safety mechanisms. But even if the Court interprets this to specifically mean the TCOs, there is little commonality established between models.

For example, the TCOs vary by type and placement in each model. Even Plaintiffs' own expert Gerling admits that TCO activation temperatures vary "widely" by manufacturer, by as much as 100F for the cavity TCOs. Gerling Expert Report 23, ECF No. 200-3. Additionally, Plaintiffs' experts discuss TCOs generally and do not focus on

the type, placement, or temperature settings of the TCOs in the 60 models now in the case.

Plaintiffs may not even be intending to focus solely on the TCO temperature settings. In their most recent Motion, Plaintiffs do not mention TCOs at all. Mot. Mod. Class Defin. 16-17, ECF No. 285. Plaintiffs only say that they will be able to put on evidence of this common design flaw and GE is entitled to mount its defense. *Id.* The Court is left to wonder just what this evidence will be. From the additional discovery Plaintiffs request, it appears they intend to bolster their claims with additional reports from the most recent version of the Safety Database. However, the number of incidents alone, from unverified sources, is not enough to show commonality between the models.

### b.    Concealment

Plaintiffs also say there is a common issue that GE concealed and failed to inform consumers of self-starts. Pls.' Br. Mot. Class Certif. 39, ECF No. 197. Once again, the emphasis is on self-starts, not lack of adequate safety mechanisms as the common design flaw. Plaintiffs provide multiple examples of different representations made by GE to the press. *Id.* at 39-40. This is different from cases in which courts have found commonality based on a single misrepresentation that was made identically to all potential class members. *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 589 (C.D. Cal. 2011).

A closer question is the issue of an omission by GE in its printed product packaging and materials and whether GE had a duty to disclose facts that are allegedly misleading to consumers.

This case is unlike cases in which plaintiffs sought class certification on the grounds of allegedly misleading advertisements. *See In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050 (C.D. Cal. 2015). In *NJOY*, the court held commonality was met where consumers (in California and Florida classes) alleged a manufacturer of electronic cigarettes engaged in false advertising and misleading omissions regarding the safety of its product compared to traditional cigarettes in violation of California's CLRA and UCL laws. *NJOY* plaintiffs argued commonality was satisfied because members were exposed to product packaging and because the marketing of the product was national and widespread. *Id.* at 1096. The court noted that issues such as whether absent class members saw the advertisements are relevant to assessing predominance under Rule 23(b)(3) not whether there are common issues under Rule 23(a)(2).

There are some differences between *NJOY* and this case. Defendants in *NJOY* did not dispute the finding of commonality at the hearing. *Id.* at 1097-98. Also, *NJOY* marketed the product as safer than traditional cigarettes. *Id.* at 1064.

GE put differently worded safety notices in some of the manuals with the warning that MWOs should only be operated with food in them, but Plaintiffs do not allege GE engaged in an advertising campaign that the MWOs were safer than other MWOs or highlighted any particular safety feature. Plaintiffs have not provided authority, and the Court is aware of none, in which class certification was granted based on similar facts. Plaintiffs rely heavily on unverified reports in the Safety Database and isolated statements by GE service representatives to specific customers. But this fails to show deception by GE such that the determination of its truth or falsity could resolve the issue

16

across each unit of each model.

The Court is satisfied that a conclusion regarding one model would not result in classwide resolution of liability as to the other models, given the differences in design emphasized by Plaintiffs' own experts.

Plaintiffs fail to sustain their burden to prove commonality under Rule 23(a)(2).

### 3.    Typicality

Federal Rule of Civil Procedure 23(a)(3) requires plaintiffs to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "[T]he commonality and typicality requirements of Rule 23(a) tend to merge." *Rikos*, 799 F.3d at 509 (quoting, *Dukes*, 131 S. Ct. at 2551 n.5). A plaintiff's claim is typical if it arises from the same event, practice, or course of conduct that (1) gives rise to the claims of other class members; and (2) if his or her claims are based on the same legal theory. *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082 (citation omitted).

To meet the typicality requirement, "a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 n.31 (6th Cir. 1976). *See also* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1764 (3d ed. 2005) ("Thus, many courts have found typicality if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory. Of course, when this is true the typicality standard is closely related to the test for the common-question prerequisite in subdivision (a)(2)").

Plaintiffs say the class representative resides in California and owned a GE

17

MWO manufactured during the class period and that it has the same defect as the class members: failure to adequately protect against smoke or fire in the event of a self-start.

GE says this does not satisfy the typicality requirement because the class representatives (including Cocks): (1) claim to have owned an MWO that malfunctioned, unlike 99.9% of the class; (2) cannot be typical of the class because of the different models at issue and the different manufacturers; (3) lack standing to assert claims relating to products someone else purchased; and (4) a defect in one MWO does not necessarily prove or disprove the claims of other class members. Br. Opp'n Class Certif., ECF No. 224 at 58-60.

At the Hearing, GE also raised a number of additional points about Cocks: (1) he owned a JVM1790 which has a convection feature, unlike the majority of MWOs in the proposed class; (2) it is unknown whether his alleged malfunction was caused by the microwave or convection feature; (3) his model was identified as one with a potential for a specific manufacturing defect, which is not present in some of the other models; and (4) his model was purchased in 2006, but GE changed post 2006 models and, therefore, Cocks' MWO is not typical of models in years after 2008.  G.E. does not discuss whether Cocks' MWO is typical or not of models in prior years 2002-2005.

Plaintiffs' typicality and commonality theory have the same flaw: their general hypothesis is not subject to common proof. If Cocks proved his own claim regarding his own model, that would not necessarily prove anyone else's claim. *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).

Plaintiffs fail to sustain their burden to prove typicality under Rule 23(a)(3).

18

### 4.    Fair and Adequate Representation

Under 23(a)(4), the Sixth Circuit applies a two-prong test to determine whether the class representative will fairly and adequately protect the interests of the class: (1) the representative must have common interests with the unnamed members of the class; and (2) it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel. *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013) (citing *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083).

In addition, the court reviews: "...the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation, and to consider whether the class members have interests that are not antagonistic to one another." *Vassalle*, 708 F.3d at 757 (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000)). "Only when attacks on the credibility of the representative party are so sharp as to jeopardize the interests of absent class members should such attacks render a putative class representative inadequate." *Id.* (citations omitted). "The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083.

The second prong of the test is easily met: Plaintiffs' counsel is qualified and able to conduct the litigation. The first prong of the test is less established; in the absence of typical claims it could be said Cocks does not have an incentive to pursue the claims of the other class members. Admittedly, it is a close question. However, there is no evidence, and the parties do not argue, that Cocks' interests are antagonistic to those of

19

other class members. For these reasons, the Court finds the requirements of Rule 23(a)(4) are satisfied.

### C.      Requirements of 23(b) Are Not Met

Class certification requires Plaintiffs to meet the requirements of Rule 23(a) and at least one of the three requirements under Rule 23(b).  *Rikos*, 799 F.3d at 509. Plaintiffs' failure to meet all of Rule 23(a)'s requirements is sufficient to defeat their Motion for Class Certification. However, even assuming, *arguendo*, that Rule 23(a) was satisfied, Plaintiffs do not satisfy the requirements of predominance under Rule 23(b)(3) or alternatively, the requirements for injunctive relief under Rule 23(b)(2).

### 1.      Requirements of Rule 23(b)(3)

Certification pursuant to Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1777 (2d ed. 1986). "Rule 23(b)(3) states that a class may be maintained where 'questions of law or fact common to class members predominate over any questions affecting only individual members,' and a class action would be 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Dukes*, 131 S. Ct. at 2549 n.2 (citations omitted). Plaintiffs fail to sufficiently demonstrate predominance.

### a.      Common Questions Do Not Predominate Over Individualized Questions

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc.*

20

*v. Windsor*, 521 U.S. 591, 623 (1997). The predominance inquiry involves consideration of the same principles that guide the Rule 23(a) commonality analysis, such as the existence of common questions, but it "is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). Although the predominance requirement is more difficult to satisfy than commonality under Rule 23(a), the requirement can be met if the common question identified "is at the heart of the litigation." *Bobbitt v. Acad. of Court Reporting, Inc.*, 252 F.R.D. 327, 343-44 (E.D. Mich. 2008) (citing *Powers v. Hamilton Co. Public Defender Commission*, 501 F.3d 592, 619 (6th Cir. 2007)).

In particular, the predominance inquiry "trains on legal or factual questions that qualify each class member's case as a genuine controversy." *Amchem*, 521 U.S. at 625. Considering whether "questions of law or fact common to class members predominate" begins, of course, with the elements of the underlying cause of action. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 131 S. Ct. 2179, 2184 (2011). The Court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues. *Reeb v. Ohio Dept. of Rehabilitation and Correction*, 435 F.3d 639, 644–45 (6th Cir. 2006).

Prior to the Hearing, Plaintiffs did not articulate the specific statutory provisions associated with the alleged violations that the Court would need to analyze in granular detail if it were doing a full predominance analysis. Neither the Third Amended Complaint nor the Motion and Brief in Support of Class Certification, which seeks certification of "a class of California residents all of whom owned [GE] branded [MWOs] manufactured since 2000," mentions a single California statute.

21

Only at the Hearing did Plaintiffs seek certification of a class of California purchasers for claims arising under the following statutes: (1) California's Song-Beverly Consumer Warranty Act, CAL. CIV. CODE § 1790 *et seq.* ("Song-Beverly") (Count III); (2) Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* ("MMWA") (Count IV); (3) California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.* ("UCL") (Count V); (4) California's Consumers Legal Remedies Act, CAL. CIV. CODE § 1770 *et seq.* ("CLRA") (Count V); and (5) Unjust Enrichment (Count VI).

While post-hearing briefs make passing mentions of California law, Plaintiffs' cursory references to state statutes – which are pivotal to a predominance analysis that is ancillary to class certification – lack the specificity required for the Court to properly parse whether or not the elements, claims, and applicable substantive state laws predominate as to the entire class. This is a problem.

Also, ambiguous arguments and pleadings create a problem for Rule 23(b)(3) analysis because "different unlawful practices will have different essential elements, different defenses may apply, and the case law concerning the statutes will differ based upon the provision at issue in a given case." *In re OnStar Contract Litigation*, 278 F.R.D. at 383.

The Court concludes that Plaintiffs do not have a cognizable theory of recovery for the warranty claims brought under Song-Beverly or the MMWA, and that numerous individualized issues arise under the consumer protection statutes and unjust enrichment claims. As a result, the predominance requirement of Rule 23(b)(3) is not satisfied.

### (1)    Song-Beverly Consumer Warranty Act

Plaintiffs allege GE violated the implied warranty of merchantability provided by the California Song-Beverly Act. Third Am. Compl. ¶ 76, ECF No. 56.

Under an earlier order following a *Daubert* hearing, the Court limited Plaintiffs' available remedy to disgorgement of profits – Method 1. Order Grant Part Den. Part Mot. Exclude Pls.' Damages Expert Thomas Frazee 11, July 31, 2015, ECF No. 260. GE asserts that following that Order, Plaintiffs lack a damages model that matches the claims they pursue. Br. Opp'n Pls.' Mot Class Certif. 33-36 , Oct. 29, 2014, ECF No. 224.

First and foremost, Plaintiffs do not even argue that disgorgement – which measures damages by the profits wrongfully obtained by GE – is available under Song-Beverly. Reply 18, Nov. 19, 2014, ECF No. 229. Song-Beverly is specific about damages; disgorgement is not listed in California Civil Code section 1794 and Chapter 7 of the California Commercial Code, section 2701 *et seq.* CAL. CIV. CODE § 1794(c); CAL. COM. CODE § 2701. California Civil Code section 1794(c) allows for a civil penalty not to exceed two times the amount of actual damages, but that provision expressly disclaims its applicability to claims "based solely on a breach of an implied warranty." CAL. CIV. CODE § 1794(c). Thus, disgorgement is not available under Song-Beverly.

Second, despite the Court's *Daubert* ruling, Plaintiffs say that Method 2 of Frazee's damages theory encompasses the same recovery authorized for Song-Beverly claims by California Commercial Code section 2714(2). Reply 18 and n.10, ECF No. 229. This argument is unavailing. Because Method 2 was found unreliable, any claims that rest upon that calculation are also excluded.

23

Because Plaintiffs are limited to a disgorgement damages theory and Song-Beverly does not award disgorgement, a Song-Beverly class cannot be certified.

### (2)    Magnuson-Moss Warranty Act

Plaintiffs seek certification over claims that GE violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* ("MMWA") by failing to comply with the written and implied warranties it made to Plaintiffs and members of the Class. Third Am. Compl. ¶ 84, ECF No. 56.

The MMWA regulates warranties on consumer goods nationwide and has two focal points. First, the MMWA applies to written warranties which relate to the nature of the material or workmanship and which certify products as defect-free or that meet a specific level of performance over a specific period of time – the direct application. 15 U.S.C. § 2301(6)(A). At the Hearing and again in their request to modify the class definition, Plaintiffs stipulated that they would drop express warranty claims from their proposed California class, Reply to Mod. Class Def. 3-4, Dec. 7, 2015, ECF No. 287; accordingly, the Court does not conduct a predominance assessment about GE's written warranties.

Second, while the MMWA provides a federal cause of action for violation of state law warranty claims, a federal cause of action is entirely derivative of state law warranty claims. *See Allen v. Hylands* (citing *Birdsong*, 590 F.3d at 958); *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 485 (C.D. Cal. 2012); *In re Carrier IQ, Inc.*, 2015 WL 274054, at *45 (N.D. Cal. 2015) (the MMWA "does not create implied warranties, but instead confers federal court jurisdiction for state law breach of implied warranty claims... [C]ourts must look to state law to determine the meaning and scope of the

24

implied warranty.").

Since there is no cognizable classwide damages theory for recovery under California's Song-Beverly Act, any implied warranty claims brought under the derivative function of the MMWA fail class certification.

### (3)    No Predominance under the UCL and CLRA Consumer Protection Statutes

The Third Amended Complaint alleges that GE "knew that the GE-branded [MWOs] were defective since at least 2002," and "concealed and/or failed to inform [...] that the [MWOs] were defective," and as a result, the "concealment and/or failure to inform constitutes an unfair, unconscionable, or deceptive act or practice within the meaning of the Michigan Consumer Protection Act, MICH. STAT. § 445.901 *et seq.* and the substantially similar laws of all other states in which Defendants do business."  Third Am. Compl. ¶¶ 87-89. Plaintiffs clarified at the Hearing that this includes California's UCL and CLRA.

The UCL prohibits unfair competition, meaning "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE § 17200. Each prong of the UCL i.e., unlawful, unfair, or fraudulent, provides a separate and distinct framework for legal liability. *See Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). Plaintiffs do not specify which prong of the UCL they seek relief under.

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." CAL. CIV. CODE §

25

1770(a). That section lists 28 independent violations. *Id.* Plaintiffs do not specify which of the 28 violations exists in this case. Consequently, the Court considers the general requirements for CLRA claims in evaluating predominance under Rule 23(b)(3).

Both the UCL and CLRA rely upon an objective, reasonable consumer test. *See Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1161–1162 (9th Cir. 2012) (internal citation omitted); *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)*; Tobacco II*, 46 Cal. 4th at 312, 93 Cal. Rptr. 3d 559, 207 P.3d 20 (2009); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (Cal. Ct. App. 2003) and *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157, 104 Cal. Rptr. 3d 329 (Cal. Ct. App. 2010), as modified on denial of reh'g (Feb. 8, 2010) (internal quotation marks omitted); *see also Stearns*, 655 F.3d at 1022–23; *In re ConAgra Foods*, 2015 WL 1062756, at *34.

Under many circumstances, this objective test renders claims under the UCL and CLRA "ideal for class certification because they will not require the court to investigate 'class members' individual interaction with the product.'" *Tait*, 289 F.R.D. at 480 (C.D. Cal. 2012) (citing *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 535 (C.D. Cal. 2011); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1125 (C.D. Cal. 2010).

But, predominance is not automatically present in all alleged UCL claims. While the Sixth Circuit has found predominance in a UCL claim, it has also noted an exception: "if the defendant made disparate misrepresentations to the class, then there still may be issues of predominance." *Rikos*, 799 F.3d at 512 (quoting *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) ("We do not, of course, suggest that predominance would be shown in every California UCL case. For example, it might well be that there was no cohesion among the members because they were

exposed to quite disparate information from various representatives of the defendant. *See, e.g.*, ... *Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 849–50 (2009).").

As with the UCL, there is an exception to the rule permitting classwide inferences under the CLRA. *In re OnStar Contract Litigation*, 278 F.R.D. at 384; *Webb v. Carter's Inc.*, 272 F.R.D. 489 (C.D. Cal. 2011).

Plaintiffs' direct the Court to quite disparate information purveyed by GE, making it unlikely that Plaintiffs can satisfy the reasonable consumer test. In their Motion, they allege misrepresentations pertaining to over the range MWOs, not all MWOs; an individual MWO, not an entire model class of MWOs, let alone all 60 models; and dishwashers – not MWOs. ECF No. 197 at 39, 40 and 42. These fragmented assertions do not add up to a uniform scheme to deceive consumers concerning inadequate safety mechanisms that warrants classwide treatment.

Additionally, Plaintiffs' generalized approach glosses over the fact that each model is made up of numerous component parts, the design of which is not uniform across the different models. GE's alleged failure to incorporate better safety mechanisms will vary by product.  Ordinarily, neither the UCL nor the CLRA requires Plaintiffs to establish a product defect. Here, however, Plaintiffs' claims of concealment, failure to warn and misrepresentation depend upon the existence of a product defect. Specifically, Plaintiffs allege that GE knew of a product defect (a design that lacked adequate safety measures in the event of a fire) and that it either withheld or misrepresented the nature of that defect. ECF No. 197 at 39-43.

The Court concludes that predominance is not satisfied for Plaintiffs' claims

27

under the UCL and CLRA. Plaintiffs fail to base their arguments for predominance in the necessary state law context. The unique way in which this case has been presented – as a broad attack on a continually changing number of models, now approximately 60 – makes it unworkable for the Court to identify and apply a single, class-wide reasonable consumer reliance standard. The only path to resolution of the consumer protection claims would require extensive subclasses, which Plaintiffs have not suggested. "It is not the District Court that is to bear the burden of constructing subclasses." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 408 (1980) "That burden is upon the [plaintiff] and it is he who is required to submit proposals to the court." *Id.* "The court has no *sua sponte* obligation so to act." *Id.*

Evaluating these causes of action goes beyond what was briefed for the Court. Evaluation is also unnecessary given the Court's finding that Plaintiffs' do not meet their burden of proof on commonality.

### (4)     No Predominance Under Unjust Enrichment

"[I]n California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citing *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 108 Cal. Rptr. 3d 682, 699 (2010); *Jogani v. Superior Court*, 165 Cal. App. 4th 901, 81 Cal. Rptr. 3d 503, 511 (2008)). Unjust enrichment and restitution, however, are still actionable under California law. *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51, 57 Cal. Rptr. 2d 687, 924 P.2d 996 (1996). "[T]hey describe the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Astiana*, 783 F.3d at 762 (quoting 55 Cal. Jur. 3d Restitution § 2). "The return

28

of that benefit is the remedy 'typically sought in a quasi-contract cause of action.'" *Id.*
(citing *Munoz v. MacMillan*, 195 Cal. App. 4th 648, 124 Cal. Rptr. 3d 664, 675 (2011)
("Common law principles of restitution require a party to return a benefit when the
retention of such benefit would unjustly enrich the recipient; a typical cause of action
involving such remedy is 'quasi-contract.'")).

As a result, "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe
the cause of action as a quasi-contract claim seeking restitution.'" *Astiana*, 783 F.3d at
762 (citing *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 166 Cal.
Rptr. 3d. 864, 872 (2014)).

Plaintiffs bring a claim for unjust enrichment, alleging that GE retained benefits –
money paid by Plaintiffs – under circumstances that make it inequitable for GE to retain
them without paying the value thereof. Third Am. Compl. ¶¶ 92-94, ECF No. 56. The
alleged inequitable circumstance is that GE retained that benefit despite the fact that *all*
MWOs were defective, and Plaintiffs, who did not know of the defect, made purchases
that they would otherwise not have made or for which they would have paid less. *Id.* at ¶
94; Pls.' Br. Supp. Mot. Class Certif. 44, ECF No. 197.

As this Court previously ruled, any owner of a MWO would be entitled to recover
restitution through a quasi-contract action if: (1) he or she possessed a defective MWO,
meaning it lacked adequate safety features; and (2) under the circumstances, it was
unjust for GE to retain the benefit, meaning the purchase price, of that MWO sale. ECF
No. 72 at 29-30.

If certain MWOs shared design particularities, common questions would
predominate over individual questions concerning whether GE's conduct was

29

inequitable; GE's retention of the entire purchase price would either be just or unjust as to all defective MWOs. But the Court cannot assume a classwide defect, nor can it ignore the design differences already discussed.

If any number less than all of the models is defective and everyone recovered, the remedy would be overinclusive; it would extract a justly retained benefit from GE. If, on the other hand, any models were defective but a fact-finder did not find liability (say because only a small minority of MWOs was defective), the remedy would be underinclusive; it would not extract enough unjustly retained benefits from GE. The risk of both errors is present and unmitigated when only one class is proposed to address what purports to be only generally similar models.

Plaintiffs have not identified any subclasses. To support certification of an unjust enrichment class, one "yes" or "no" answer would have to be given on whether it was "just" to retain the purchase price of all 60 MWO models. Thus, in order to certify an unjust enrichment question, the Court needs a particular and strong similarity between models in the class such that all or none would be defective. Plaintiffs have not presented the Court with such specificity. The Court cannot find that common questions predominate over individualized inquiries under an unjust enrichment theory of liability.

### 2.    Class Action is Not a Superior Method of Adjudication

Predominance is not met. Nonetheless, the Court addresses superiority to provide a complete record, and concludes that Plaintiffs have not met their burden to establish the superiority of a class action.

Rule 23(b)(3) requires that Plaintiffs demonstrate that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED.

R. Civ. P. 23(b)(3). In general, this "is met if the class action is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 407 (E.D. Mich. 2012) (citing *Daffin v. Ford Motor Co.*, 458 F.3d 549, 554 (6th Cir. 2006)).

Superiority is evaluated through four statutory factors: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions;" (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members;" (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum;" and (4) "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(a-d); *Amchem Products*, 521 U.S. at 616.

Superiority is a close issue when, as here, both the administrative alternative and a class action have drawbacks. Ordinarily, efficiency and judicial economy make one class action dramatically superior to individual suits by approximately 2.6 million California MWO purchasers. Moreover, it would be more advantageous for Plaintiffs to participate in a presently-pending suit than to wait for speculative relief from the Consumer Protection Safety Commission.

The glue that ordinarily binds the above factors to make a class action superior is the prospect that a class action will promote "uniformity of decision as to persons similarly situated." *See, e.g.*, *Amchem*, 521 U.S. at 613. While Plaintiffs share some similarities – they all purchased MWOs, sue the same defendant, and bring claims under the same statutes – the Court cannot conclude that all Plaintiffs share enough similarities that a uniform decision is likely. Before the Court is a request for one class, not narrowly drawn subclasses. The differences across models create a risk that "one"

31

trial will in substance be far more mini-trials. Superiority is not met.

### 3.    Requirements of Rule 23(b)(2)

As an alternative to meeting the requirements of Rule 23(b)(3), Plaintiffs seek certification under Rule 23(b)(2). "The key to [a Rule 23(b)(2)] class is ... the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 131 S. Ct. at 2557 (internal quotation marks omitted). Moreover, "Declaratory or injunctive relief under 23(b)(2) is appropriate where it 'is a separable and distinct type of relief that will resolve an issue common to all class members.'" *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 428 (6th Cir. 2012). To certify a class under Rule 23(b)(2), it is generally sufficient "that class members complain of a pattern or practice that is generally applicable to the class as a whole." *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 481 (N.D. Cal. 2014) (citing *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010)).

Plaintiffs fail to satisfy the Rule 23(b)(2) requirement of an issue common to all class members, such that the defendant's conduct should be enjoined or declared unlawful only as to all of the class members or none of them. *See Dukes*, 131 S. Ct. at 2557.

Here, each MWO model could be thought of as its own contract; its component parts either differ in form or are located in different places. At least three forms of relief requested by Plaintiffs – prohibition on sales, recall, and warning notices – would change, or at least have the potential to change, depending upon the model at issue. After all, it would not make sense to prohibit sales of a non-defective product.

The Court makes no judgment about the degree of similarity or difference

32

between each model, but recognizes that both the assessment of and an ultimate order for injunctive relief would require a higher degree of specificity. Absent further evidence of similarity across models, the issue of injunctive relief could not be addressed with one fell swoop.

The other requested form of relief is the inclusion of safety measures in the event of a self-start. The Court is not aware of any legal basis to supplant a corporation's business judgment through a mandated product modification in the absence of a proven defect. Because GE contests whether each and every model is defective, determination of this form of injunctive relief would also not necessarily lead to one consistent answer pertaining to all putative class members.

Certification of a class under Rule 23(b)(2) as an alternative to a monetary damages class under Rule 23(b)(3) would not be appropriate.

## IV.   CONCLUSION

Plaintiffs' Motion for Leave to Submit a Modified Class Definition (ECF No. 285) is **GRANTED IN PART** and **DENIED IN PART**.  The Court accepts the modified class definition Option 2.  But, Plaintiffs fail to meet the requirements of Rule 23(a)(2) and (3), commonality and typicality.  Plaintiffs also do not sustain their burden under Rule 23(b). They have not demonstrated that common issues of law and fact predominate across the proposed class, as required by Rule 23(b)(3). In addition, the models have not been shown to be sufficiently similar such that classwide injunctive relief would be appropriate under Rule 23(b)(2).  Plaintiffs' Motion for Class Certification (ECF No. 196) is **DENIED** without prejudice, with the remainder of Plaintiffs' alternate classes and causes of action

held in abeyance.

Plaintiffs' request for post-certification discovery in their Motion for Leave to Submit a Modified Class Definition (ECF No. 285) is **DENIED**.

GE's Motion to Strike Plaintiffs' Reply (ECF No. 288) is **DENIED**.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  April 14, 2016

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on April 14, 2016.

s/Linda Vertriest
Deputy Clerk